MARSHALL FIELD & Co. *v.* UNITED STATES (No. 1257).[1]

MARBLES NOT SHOWN TO BE SCULPTURES.

No typical exhibits of the merchandise were produced, and the testimony as offered in behalf of the importers was based on photographs. The burden of showing the goods to be sculptures rested on the importer. The board found the importers had failed to make out their case, and there is nothing in the record to warrant a reversal of that finding.

United States Court of Customs Appeals, March 25, 1914.

APPEAL from Board of United States General Appraisers, Abstract 33287 (T. D. 33677).

[Affirmed.]

*Lester C. Childs* for appellants.

*William L. Wemple,* Assistant Attorney General (*Charles E. McNabb,* assistant attorney, of counsel; *Charles D. Lawrence,* special attorney, on the brief), for the United States.

Before MONTGOMERY, SMITH, BARBER, DE VRIES, and MARTIN, Judges.

BARBER, Judge, delivered the opinion of the court:

In this case it is required to determine whether certain importations are dutiable at 50 per cent ad valorem as manufactures of marble under paragraph 112 of the tariff act of 1909, as assessed, or at 15 per cent ad valorem under paragraph 470 of the same act as sculptures, as claimed by the importers.

The merchandise was not exhibited to the board, but certain photographs were introduced in evidence before it.

In the returns to this court the board states that the "photographs referred to in the appraiser's report and collector's Exhibit 1, referred to in the testimony, will be forwarded to the court after briefs are filed."

The opinion of the board indicates that there were 27 protests, 20 of which were abandoned. All the protests were overruled by the board.

At the hearing there the importers first called Mr. Garnsey, its purchasing agent, who testified he bought a part of the merchandise. He was shown photographs covering three protests and testified that the same correctly represented what they purported to show; that he had "seen the exact thing and the photographs." These photographs were received and marked "Coll. Ex. 1." The witness stated that on some of the photographs lead-pencil marks were placed to indicate the article claimed on under the protests.

In the files here are three envelopes, each marked "Coll. Ex. 1." Therein are contained: (1) A photograph of an article, apparently a bowl, in the center of which is the figure of a child with a shell in its hand, the bowl being supported by a standard with a base. (2) Another showing a bowl from the center of which arises a standard supporting a smaller bowl, from the center of which arises another standard supporting something which resembles a vase. (3) An-

---

[1] Reported in T. D. 34324 (26 Treas. Dec., 548).

other showing a bowl supported by short legs or feet, from the center of which arises a column or pedestal supporting what appears to be an urn.    (4) One large and one small photograph, probably of the same article, and which seem to be the "low fountain" referred to in the evidence.    (5) Another showing the figure of a lion on a low base.

In another envelope, not marked as an exhibit, is a small photograph showing as the center figure a bowl supported by a standard and base; from the center of this bowl arises another standard supporting a small bowl from whose center another short standard arises. This photograph we assume to be the one referred to in the appraiser's report.    It is marked with a number corresponding to that of one of the protests in the case which does not appear to have been abandoned.

Some of these photographs show various other articles and figures, but with one exception there appears on each of those a lead-pencil mark drawn around the central figure.

We assume from the photographs in connection with the record that the appeal here relates only to the articles specifically above described, and that for the purposes of this case all such articles are in the general class of fountains, excepting the figure of the lion; and it is not clear whether the appeal relates to this or not, although we so assume.

The photographs indicate that all these articles were cut or carved.

The opinion of the board and the briefs in the case would indicate that various other articles, as well as those above mentioned, were supposed to be the subject of this appeal, but in view of the fact that the evidence appears to refer only to those shown on the photographs, as above stated, we limit the decision thereto.    If we err in this regard, it arises from the failure of counsel to sufficiently direct the attention of witnesses to the articles in issue, and also to see that the record sent up is sufficiently comprehensive and explicit.

The material part of the board's opinion is as follows:

Some testimony was introduced on the part of the importer calling for expressions of opinion by the witnesses as to the character of the artist, judging from the photographs taken of some of the articles.    This testimony is entirely uncertain and speculative, in our judgment, upon the question of whether the importations are the "professional production of a sculptor only."    We are not satisfied that upon the whole record we would be warranted in overthrowing the finding of the collector.

The substance of the relevant evidence is as follows:

Mr. Gardner, a professional sculptor, testified that he had examined the photographs of this importation; that he would say they showed that the originals had artistic merit and should be classed as sculpture; that they were the production of professional sculptors; that "it took a sculptor to make the design—it had to be molded by a sculptor;" that he did not know whether the articles were finished by a sculptor or by an artisan; that from what he had seen he imagined works of the character were made in large quantities; that he had seen them in this country.

Mr. Peterson, also a professional sculptor, testified that he had examined the photographs; that they were very artistic and he should say from the technique of the work shown represented articles made by professional sculptors; that he did not think they were made in large quantities; that he should say by the technique that the goods were fully executed by a sculptor, and to illustrate this he referred to the figure of a dolphin shown in the low fountain, and said no artisan made it; that by merely looking at the photographs he could detect the sculptor rather than the artisan; that the fineness of the outline and the technique of the work which would be reflected in the photographs enabled him to so conclude.

Mr. Garnsey was again called. He testified that he visited Italy to purchase a part of these articles; that he had had long experience in this line of business; that he knew some of the sculptors of the merchandise; that he knew a sculptor named Lenzi, who was, he said, the sculptor of the low fountain; that he knew Lenzi was a professional sculptor; that all the photographs, in his opinion, represented articles which were the production of professional sculptors (but, except as above-mentioned, he did not name the sculptors); that he had no personal knowledge as to whether the designs shown by the photographs were executed and completed by a professional sculptor rather than by a skilled artisan in his employ; that he could not say whether any one of the articles shown was the only one of its kind or was a duplicate; that of the low fountain and at least one other article the importer had duplicates; that for all he knew the importations may have been designed and executed by skilled artisans working under the superintendence of a sculptor. Near the close of his testimony he said:

I would like to make an explanation of the manner in which these things were turned out. It is generally understood that it is not a sculptor's work to make the marble—the sculptor's work is to make the model. After that is made and sold, as it is many times, the duplicate is bound to be a piece of sculpture provided the workmen are able to execute well enough to carry out the detail in this piece. Nearly all pieces are made by the artist or sculptor who makes the study or design. He may be—in most instances he is—the originator of the design, and the sculptor may have 1 or 100 workmen; but the real value comes in his being able to magnify himself through his workmen, and he may be able to get the same result.

No witness other than Garnsey had seen the importations, and whether or not he had seen all of them does not appear except as shown by the testimony we have referred to. The Government called no witnesses.

The pertinent portion of paragraph 470 is as follows:

470. * * * But the term "sculptures" as used in this act shall be understood to include only such as are cut, carved, or otherwise wrought by hand from a solid block or mass of marble, stone, or alabaster, or from metal, and as are the professional production of a sculptor only. * * *

To be entitled to the benefit of its provisions the importer must establish that these articles are sculptures; that they are cut, carved, or otherwise wrought by hand from a solid block or mass of marble or stone; and that they are the professional production of a sculptor only.

It is not denied that the witnesses were qualified to testify on the subject of scuplture or that the articles are wrought from marble.

It is argued on behalf of the importer that we ought to reverse the judgment of the board as contrary to or unsupported by the weight of evidence.

It appears therefrom that except as to the low fountain, which will be later referred to, no witnesses undertook to say what sculptor produced the articles. That *some* sculptor produced them was attempted to be shown by witnesses who had never seen the merchandise, excepting only Mr. Garnsey, whose testimony will be later and more particularly referred to, and who based their opinion to that effect upon photographs thereof. No showing was made that the best evidence, namely, the deposition or testimony of the producer himself or some one having personal knowledge thereof, as to their production, could not have been obtained. In other words, reliance in the main is had upon expert evidence to show the necessary fact, namely, that the merchandise was the professional production of a sculptor only.

The general rule relating to the probative force of such evidence upon the triers of fact is that it is only to aid them in finding what the fact is and is not conclusive. Lawson on Expert and Opinion Evidence (page 268, and cases cited).

In *The Conqueror* (166 U. S., 133), the Supreme Court said:

There is no rule of law which requires them (the triers) to surrender their judgment or to give a controlling influence to the opinion of scientific witnesses.

The Board of General Appraisers, or one of them at least, has heard the witnesses in this case and all presumably have considered their evidence. They have said with reference to it that it is uncertain and speculative and has not satisfied them that the action of the collector in assessing this merchandise was erroneous. Had we been required in the first instance to pass upon the same question we are not at all clear that we would not have reached the same conclusion.

It may be, and with good reason, that the board doubted the ability of any one of these witnesses, although testifiying in good faith, to give satisfactory evidence from a photograph of an article as to whether the article was the production of a professional sculptor or a skilled artisan.

Assuming, as the evidence shows, that works of this kind must be made from a model which is a professional sculptor's creation, it must also be assumed that a skilled artisan might with his tools be able to produce a close imitation thereof, so close, indeed, that not every photograph thereof would disclose whether the artisan or the sculptor did the work or whether or not the sculptor supervised it.

It is well known that while the photographic art *may* produce vivid and realistic pictures of articles placed before the camera, yet so much depends upon position, light, shadow, skill of photographers, and perfection of the apparatus in each case that it can hardly be said as a matter of law that photographs like these, which show but one view or presentation of the object, furnish a sufficient representation thereof to enable one, however skilled as a sculptor or as a judge of sculpture, to declare from an inspection of a given photograph that it is the production of a professional sculptor only. A photograph taken with the camera in a different position, showing a different view of the article, might reveal evidence that on the whole the artisan and not the professional sculptor produced the original.

Opinion evidence of this kind, if it is admissible on such an issue as we have here, which is by no means conceded, must in the very nature of things be uncertain, and should be carefully scrutinized, notwithstanding the witness himself may have no doubt as to the correctness of his opinion. If such evidence is admissible its office is only to aid the triers to form their opinion upon the very question as to which the witness is permitted to express the opinion which he entertains.

It is not of the class of testimony given by the person who produced the article. Such evidence if credible and not rebutted might, if disregarded by the triers, be a ground for and demand a reversal.

No reason appears in this case why such evidence was not offered, nor does it appear why typical exhibits were not produced.

As to the low fountain, concerning which Mr. Garnsey testified that one Lenzi, a professional sculptor, was the sculptor thereof, no different conclusion can be reached than as to the other articles. The witness did not undertake to say that of his own knowledge he he knew whether the sculptor did any more than to make the model of the fountain; that is, he could not say whether after the model thereof was made, the work was or was not executed by an artisan rather than by a sculptor, or whether the sculptor supervised the work if the artisan did it. He only gave it as his *opinion* that this fountain, like the other articles, was the production of a professional sculptor.

As to the low fountain, he further testified that it, as well as one other article, was imported in duplicates. Mr. Gardner testified that works of this character, referring to the photographs generally, were made in large quantities; that he had seen them in this country. From this evidence it is not clear that the low fountain as well as the other merchandise was not in fact the product of skilled artisans, produced in quantities in the course of a business to meet a commercial demand, which class of merchandise we have held did not come within the paragraph. Downing *v.* United States (3 Ct. Cust. Appls., 473; T. D. 33043).

As was held in Lazarus v. United States (2 Ct. Cust. Appls., 508; T. D. 32247), the manifest purpose of Congress in providing for the low rate of duty under paragraph 470 was "to protect the labor and industrial arts of this country against the competition of similar and cheaper labor of foreign countries," and upon the other hand "to permit in the interest of art and education the introduction into this country at a low rate of duty such sculptures as are the product of a higher order of skilled and artistic conception."

As we have said in other cases where claim was made under this paragraph, the importation *may* be entitled to its benefit, but the burden of so showing is upon the importer.

The board has found in this case that the importer has not discharged this obligation and we are not justified in reversing its action.

The judgment of the Board of General Appraisers is *affirmed.*