O. O. FRIEDLAENDER CO. v. UNITED STATES (No. 3430)[1]

United States Court of Customs and Patent Appeals, November 20, 1931

*James W. Bevans* for appellant.

Charles D. Lawrence, Assistant Attorney General (*Marcus Higginbotham, jr.,* and *Ralph Folks*, special attorneys, of counsel), for the United States.

[Oral argument October 12, 1931, by Mr. Bevans and Mr. Folks]

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges

GRAHAM, Presiding Judge, delivered the opinion of the court:[2]

The appellant imported at various times and made 37 entries of certain merchandise claimed by it here to be works of art. In all

---

[1] T. D. 45295.
[2] Rehearing denied.

cases the classification made by the collector was under paragraph 399 of the Tariff Act of 1922 as manufactures of metal. The various protests claimed the goods to be dutiable as "works of art" or "statuary" under paragraph 1449 of said act or, in the alternative, in some of the protests, as incandescent-light lamps, under paragraph 229 thereof. The claim under the latter paragraph was abandoned on the trial in the court below. The cases were consolidated and heard together.

The United States Customs Court overruled the protests, and the importer has appealed.

On the trial below the records in two preceding cases, namely, 213757-G and 214816-G, and 258550-G, were offered and received in evidence. The subject matter involved in said matters was, concededly, of the same general character as that involved here, and the same principles seem equally applicable to all. In one of these incorporated records, namely, 258550-G, counsel for the importer conceded, in the court below, that it was not claimed the imported articles were works of art, but the sole claim was that they were "statuary" under the language of said paragraph 1449. In the case at bar, however, both claims are pressed, first, that the articles are works of art; and, second, that they, even if not works of art, are statuary.

Said paragraph 1449 is as follows:

PAR. 1449. Works of art, including paintings in oil or water colors, pastels, pen and ink drawings, and copies, replicas, or reproductions of any of the same; statuary, sculptures, or copies, replicas, or reproductions thereof; and etchings and engravings; all the foregoing, not specially provided for, 20 per centum ad valorem.

On the hearing of this case and the incorporated records a very large number of exhibits and samples was introduced as well as a large number of photographs and cuts of articles not produced as samples. These samples, photographs, and cuts, were before the court below and are now before us.

The court below, as to such of the imported articles as were represented on the hearing by photographs or cuts, refused to disturb the action of the collector, basing its judgment upon its finding in *Wanamaker* v. *United States*, T. D. 44115, 57 Treas. Dec. 986, and upon the following expression of opinion contained in the incorporated record, protest 258550-G, decided in *Friedlaender* v. *United States*, T. D. 43393, 55 Treas. Dec. 776, which is as follows:

\* \* \* In many of the importations included here samples were not produced. Dependence was placed upon photographs purporting to represent the goods, and the testimony of the importer that they are like, or produced in the same manner as, some of the importations now before the court or heretofore passed upon. We do not think that is evidence upon which we can base a finding that they are works of art.

This action is complained of as error by the appellant and is argued at length here.

The physical exhibits produced before the court are of various types. They consist in the main of statuettes of human beings, animals, and birds, in various postures. In a few cases the material of which these objects are made is bronze. Most of them are made of spelter. Many have bases of marble or onyx or composition stone, and a few of the articles are composed in part of ivory or ivoryoid. In one class of these articles no utilitarian purpose seems to be served, and they are purely decorative. In another class a distinctly utilitarian purpose is accomplished, some of them being book ends, others desk sets having ink bottles, pen trays, and the like, and a third class is obviously lamps for use in electric lighting. A considerable number of this last class are particularly adapted for use as newel-post fixtures. One exhibit represents a figure of a nude woman gazing into a pool of water, which pool is intended to be illuminated by a small electric bulb beneath a transparent or translucent layer of glass or stone. Another represents a number of wading birds standing about the edges of a similar illuminated pool made of translucent stone. Another represents a group consisting of an Arab mounted on a camel with a female figure carrying water, and these figures surmounted by a palm tree under the leaves of which are two small electric-light bulbs, the whole piece containing hidden wiring for use in connection with electric-light current. When the lights are lit a pleasing glow is reflected upon the figures beneath.

These articles are bought, sold, and used for decorative purposes and are generally pleasing in appearance.

The witness, William M. Friedlaender, testified as to the method of their manufacture, and no other testimony was offered on this point. Originally a clay model is made by some sculptor or artist. From that a plaster reproduction is made, and from this reproduction, which is made in sections, a metal mold is made. If the figures are to be made of spelter the spelter is poured into these metal molds. If the figure is to be made of bronze, instead of a metal mold one is made from French sand, which has the property of being able to be packed closely about the clay model in such a way as to accurately portray every detail thereof. But one reproduction can be made from the sand molds, while the metal molds can be used indefinitely. When the molten metal is poured into the molds, these molds are whirled or manipulated so that the metal reaches every part of the interior of the mold. As the portion of the metal in contact with the mold hardens the interior molten metal is drawn off. The reproduction is then removed from the mold and finished This finishing is done by chiselers or artisans and is not done under the direction of the original or any other artist or sculptor From the time the original clay

model is made all the work of producing these articles is done by arti-
sans or workers in metal. When the article comes from the mold it
is rough in places, and excess metal is found upon it which must be
removed in order to give the article, when completed, a pleasing and
finished effect. This work is done by the artisan, who finishes it
according to his own individual ideas as to how the work should be
done, his object, of course, being to follow, as nearly as he can, the
original design.

The witness testified that these various articles were turned out by
the process hereinbefore described in any number desired and that
some of them had been reproduced much more than 50 times.

The witness was unable to state the name of any sculptor or artist
who had prepared any of the original models for these articles. He
stated, in a general way, that they were made by artists, giving as his
reason therefor that no one but an artist or sculptor could prepare
such models. The witness was not an artist or sculptor, and the
testimony he gave was not that of an expert in art but of one who
dealt in these articles as a commercial proposition.

It is conceded that the articles in the various protests involved in
this and the incorporated cases are of the same general character, and
it follows that the tests applied to some of them are applicable to all.

In one of the incorporated records, protests 258550–G, etc., the
Government called two witnesses, Thomas Hudson Jones, an Amer-
ican sculptor of note, and Robert Ingersol Aiken, by error named in
the record as Robert Ingersol Allen, who is also a professional sculptor.
Both of these witnesses testified unequivocally that the imported
articles were not, in their opinions, works of art. The witness Jones
expressed the opinion, in a general way, that a work of art must be a
work of the fine arts, and that such works must be such as have "a
certain amount of artistic merit, technical ability, skill, and crafts-
manship." He was of the opinion that these articles were not of such
a character and were not such as had the artistic appeal necessary to
make them works of art. As to certain of the articles he stated that
the originals were not works of art, and as to two supposed copies of
a statue of a discus thrower, he stated that they were not faithful
reproductions. We think it fairly inferable from the testimony of
this witness that neither the imported articles nor the originals from
which they were made were works of art. The witness Aiken, in
substance, coincided in the views expressed by Jones and stated,
further, that a reproduction of an original work by a sculptor or
artist "should naturally show the detail that was in the original, the
handicraft of the artist." He was of the opinion that the articles in
question were not such reproductions.

Error is alleged in the action of the court below in holding that the
photographs and cuts introduced in evidence were insufficient to

establish that the imported articles were works of art. We find no error in that respect. The importer testified that the photographs were accurate representations of said articles. On the other hand, the witness Jones stated that one could not accurately determine, from a photograph, whether a piece of statuary displayed artistic merit.

We had a somewhat similar question before us in *Marshall Field & Co.* v. *United States*, 5 Ct. Cust. Appls. 191, T. D. 34324. In that case the admissibility of certain photographs of certain goods claimed to be "sculptures," under paragraph 470 of the Tariff Act of August 5, 1909, was involved, and these were introduced in evidence to support the claim that the imported articles were sculptures. We there said, in part:

> It is well known that while the photographic art *may* produce vivid and realistic pictures of articles placed before the camera, yet so much depends upon position, light, shadow, skill of photographers, and perfection of the apparatus in each case that it can hardly be said as a matter of law that photographs like these, which show but one view or presentation of the object, furnish a sufficient representation thereof to enable one, however skilled as a sculptor or as a judge of sculpture, to declare from an inspection of a given photograph that it is the production of a professional sculptor only. A photograph taken with the camera in a different position, showing a different view of the article, might reveal evidence that on the whole the artisan and not the professional sculptor produced the original.
>
> Opinion evidence of this kind, if it is admissible on such an issue as we have here, which is by no means conceded, must in the very nature of things be uncertain, and should be carefully scrutinized, notwithstanding the witness himself may have no doubt as to the correctness of his opinion. If such evidence is admissible its office is only to aid the triers to form their opinion upon the very question as to which the witness is permitted to express the opinion which he entertains.

It is vigorously contended that the imported articles are such works of art as are intended to be covered by said paragraph 1449; that paragraph 1704 of the free list of said Tariff Act of 1922 is limited by its express language to works of the fine arts; that said paragraph 1449, not being so limited by its language, is not so limited in its meaning but should be held to include all objects of art such as these now before us. In support of this contention attention is called to the Summary of Tariff Information, 1921, prepared for the use of the Senate Finance Committee while H. R. 7456 was being considered, and in which the following language appears relative to paragraph 376 of the Tariff Act of October 3, 1913, the predecessor paragraph of said paragraph 1449:

> *Description and uses.*—For most practical purposes, works of art may be classified as follows:
>
> (1) Products of the fine arts, properly so called, intended solely for ornamental purposes, and including paintings in oil and water colors, on canvas, plaster, or other material, and original statuary of marble, stone, or bronze.

(2) Minor objects of art, intended also for ornamental purposes, such as statuettes, vases, drawings, etchings, etc., which are susceptible of an indefinite reproduction from the original.

(3) Objects of art which serve primarily an ornamental and incidentally a useful purpose, such as painted or stained-glass windows, tapestry, paper hangings, etc.

(4) Objects primarily designed for a useful purpose, such as ornamental clocks, higher grades of carpets, curtains, etc.

The list of articles included under this paragraph is restricted by paragraphs 1685 to 1689, inclusive. The greater number of works of art are entered free under those paragraphs.

It is argued, from this excerpt, that the said paragraph 1449 is as broad in its scope as contended for by appellant.

This question is not a new one in this court. In the recent case of *United States* v. *Hensel, Bruckmann & Lorbacher*, 18 C. C. P. A. (Customs) 297, T. D. 44504, two large candelabra, composed of glass, copper, and brass plated with gold, were claimed to be dutiable as works of art under said paragraph 1449. This court called attention to the fact that the Congress, in reenacting paragraph 376 of the Tariff Act of October 3, 1913, as paragraph 1449 of the Tariff Act of 1922, had done so without material change in so far as the provision "works of art" is concerned. We then called attention to the fact that this court had held, in an unbroken line of decisions since *United States* v. *Olivotti & Co.*, 7 Ct. Cust. Appls. 46, T. D. 36309, that this language, in said paragraph, and its predecessor paragraphs, was applicable only to works of the fine arts. As a consequence it was held that the candelabra, although ornamental and decorative, not being shown to be such works of art, were not properly classifiable under said paragraph 1449.

In that connection the court called attention to the fact that the Summary of Tariff Information, 1920, prepared for the use of the Ways and Means Committee of the House of Representatives in preparing said bill H. R. 7456, called attention to the decision of this court in said *Olivotti* case and quoted from it. It therefore appears that the Congress was well advised of the judicial construction of said language when said paragraph 1449 was enacted.

The *Hensel, Bruckmann & Lorbacher* case, *supra*, was in part based upon our decision in *Frei Art Glass Co.* v. *United States*, 15 Ct. Cust. Appls. 132, T. D. 42214, where glass mosaics were involved. There we stated, in part:

While it may seem incongruous to hold that things which are in fact works of art are not so in a tariff sense, the apparent reason therefor lies in the manifest intent of Congress to admit at a low rate of duty artistic works representative of the fine arts such as paintings and sculptures, and at the same time to protect the American producers of such articles as belong to the decorative and industrial arts. The idea is fully stated in the opinion in *Lazarus* v. *United States, supra.*

To be classifiable under said paragraph 1449, therefore, the imported goods must be works of art or copies, replicas, or reproductions of

the same, or they must be statuary or sculptures, or copies, replicas, or reproductions thereof as hereinafter defined. To be works of art they must be such as come within the scope of our decisions, heretofore referred to.

A consideration of the record made in the court below leads us to the conclusion that neither the imported articles nor the original models from which they were made are such works of art. On the contrary the weight of the testimony is to the opposite effect. The witnesses, Jones and Aiken, both entirely competent to judge and themselves the only artists testifying, give it as their expert opinion that the objects are not works of art. If the originals were not works of art, then the imported articles could not be copies, replicas, or reproductions of works of art.

There was no error, therefore, in the finding by the court below, on this record, that the imported articles were not shown to be such works of art, copies, replicas, or reproductions of the same as are contemplated in said paragraph 1449.

It is next argued that even if these articles be not considered to be works of art, as specified in said paragraph 1449, they are "statuary" as mentioned in the succeeding language of the paragraph; that the word "statuary" is not limited in its meaning by the opening words of the paragraph, "works of art"; and that the term "statuary" includes, in its common meaning, all the imported articles.

We have had this point under consideration in *Romano Co.* v. *United States*, 19 C. C. P. A. (Customs) 191, T. D. 45294. In that case we held that the said word "statuary" must be held to be limited in meaning to such statuary as is works of art, within our construction of said words as hereinbefore referred to. It is unnecessary to further enlarge on what we have said in the *Romano* case, *supra*.

It follows that, if the imported articles are not works of art within the meaning of said paragraph, they can not be classified as statuary thereunder.

The judgment of the United States Customs Court is *affirmed*.

### DISSENTING OPINION

GARRETT, Judge: Certain of the articles covered by some of the entries appear to be statuary without utilitarian purpose, as stated in the majority opinion. These articles, I think, should be classified under paragraph 1449, for the reasons stated in the dissenting opinion in *Cassard Romano Co. et al.* v. *United States*, 19 C. C. P. A. (Customs) 191, T. D. 45294, decided November 2, 1931, and referred to in the majority opinion, *supra*.