UNITED STATES *v.* MRS. ADELAIDE EHRICH (No. 3704)[1]
MRS. ADELAIDE EHRICH *v.* UNITED STATES (No. 3705)

---

[1] T. D. 47019.

United States Court of Customs and Patent Appeals, April 16, 1934

*Charles D. Lawrence*, Assistant Attorney General (*Robert C. O'Grady* and *Ralph Folks*, special attorneys, of counsel), for the United States.

*Barnes, Richardson & Halstead* (*Samuel M. Richardson* and *Joseph Schwartz* of counsel) for Mrs. Adelaide Ehrich.

[Oral argument December 8, 1934, by Mr. Folks and Mr. Richardson]

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges

GRAHAM, Presiding Judge, delivered the opinion of the court:

The appellant imported at the port of New York, under the Tariff Act of 1922, certain merchandise, described by the appraiser in his answer to the protest as "vases, boxes, and other articles composed in chief value of blown and decorated glass." The particular articles involved in this importation are two glass vases, the product of one Henri Navarre. These were classified by the collector as decorated or ornamented glassware, under paragraph 218 of the Tariff Act of 1922. The importer protested, claiming them to be dutiable at 20 per centum under paragraph 1449, with other alternative claims which are not before us.

The appellant also imported at the same port, under the Tariff Act of 1930, certain other merchandise stated by the appraiser, in his answer to the protest, to be "articles of colored glass", which was classified by the collector as decorated or ornamented glass articles under paragraph 218 (f) of the Tariff Act of 1930. The importer protested, claiming the articles to be dutiable under paragraph 1547, or free of duty under paragraph 1807 of the Tariff Act of 1930.

The trial court held, in part:

* * * we find that the weight of the evidence establishes that the three samples produced for the inspection of the court and received as Exhibits 1, 2, and 3, are works of the free fine arts, not specially provided for, and that all articles represented by these exhibits are dutiable at 20 per centum ad valorem under paragraph 1449 of the Tariff Act of 1922 or paragraph 1547 of the Tariff Act of 1930. Citing *Thomas* v. *United States*, Abstract 47325. The protests are sustained to this extent. With respect to all other articles involved, samples thereof not having been produced for the inspection of the court, we find that plaintiff has failed to sustain her burden of proof, and the protests are overruled accordingly.

The court also refused to consider the photographs introduced, stating:

* * * It has been held consistently that photographs of imported articles are not sufficiently competent evidence to establish that the articles illustrated thereby are works of art within the meaning of the tariff acts. Citing *Marshall Field* v. *United States*, 5 Ct. Cust. Appls. 191, T.D. 34324; *Friedlaender* v. *United States*, T.D. 43393; *Wanamaker* v. *United States*, T.D. 44115; and *Friedlaender* v. *United States*, 19 C.C.P.A. 198, T.D. 45295.

Both parties have appealed from the resulting judgment. The Government alleges error in sustaining the protests to any extent. The importer alleges error in the refusal of the court to find all the articles dutiable, as claimed, under paragraph 1449 of the Tariff Act of 1922, or under paragraph 1547 of the Tariff Act of 1930.

The relevant provisions of the paragraphs involved are as follows:

PAR. 218. * * * and all articles of every description not specially provided for, composed wholly or in chief value of glass or paste, * * * decorated or ornamented in any manner, whether filled or unfilled, or whether their contents be dutiable or free, 55 per centum ad valorem * * *.

PAR. 1449. Works of art, including paintings in oil or water colors, pastels, pen and ink drawings, and copies, replicas, or reproductions of any of the same; statuary, sculptures, or copies, replicas, or reproductions thereof; and etchings and engravings; all the foregoing, not specially provided for, 20 per centum ad valorem.

PAR. 218. (f) * * * and all articles of every description not specially provided for, composed wholly or in chief value of glass, * * * decorated or ornamented in any manner, whether filled or unfilled, or whether their contents be dutiable or free, 60 per centum ad valorem.

PAR. 1547. (a) Works of art, including (1) paintings in oil or water colors, pastels, pen and ink drawings, and copies, replicas, or reproductions of any of the same, (2) statuary, sculptures, or copies, replicas, or reproductions thereof, valued at not less than $2.50, and (3) etchings and engravings, all the foregoing, not specially provided for, 20 per centum ad valorem.

Three of the articles included in the second importation, known as Exhibits 1, 2, and 3, together with the photographs of several others of the same shipment, were introduced in evidence in the trial court and are here with the record.

Exhibits, 1, 2, and 3 are in the form of vases. Exhibit 1 is about 13 inches high and approximately 5½ inches in diameter. It has a smaller base, about 3½ inches in diameter, above which the article widens to its extreme diameter and then tapers somewhat toward the top. The top rim is rounded, and horizontally surrounding the article are a number of concentric ridges, with like ridges on each side of the article, extending vertically. In color it is greenish, and has irregular splotches of dark pigment scattered through it. The bottom is ground off flat.

Exhibit 2 is about 7 inches in height and 5 inches in diameter, and is similarly colored and has similar concentric ridges.

Exhibit 3 is about 8½ inches in height, with an extreme diameter of about 6 inches and has a ground bottom. It has a representation of a compound leaf on each side of the upper portion thereof, and has three concentric ridges around its base. The glass is clear, but has many small air bubbles contained in its substance.

The other articles, as shown by the photographs, are a deep dish, a flask-shaped article, a vase with fluted leaflike decorations on the side, a vase with larger leaflike protuberances on the side, and an article having a truncated ovoid base portion and a long extended

portion simulating the neck and head of a swan, or other similar bird. These are all made of glass.

The testimony shows that these products are made by a French sculptor by the name of Henri Navarre, and each of them has his signature scratched in the bottom. In making them Navarre, who is shown by the testimony to be a sculptor of note and reputation, has a workman insert a long rod, called a pontil, into the liquid glass, and an amount of molten glass, sufficiently solidified to adhere to the rod, is taken out. Navarre then, with wooden spatulas and a hammer, shapes this glass, before it cools, into the form which he desires to make. He also, at the same time, introduces the coloring matter and the bubbles of air. The introduction of the color and air bubbles, and his technique of leaving the surface of his artifacts smooth, constitutes a secret process which Navarre will not permit the public to inspect.

The record shows that there are at least two other producers of this kind of material—those produced at the LaLique factory, in France, and those produced by a man by the name of Melle, and that the process is a new one, only having been invented and practiced in very recent times.

There is no evidence in the record that these objects are not articles of utility.

On the trial below, three witnesses were called by the importer in an effort to establish that the imported articles in question here are works of art within the purview of said paragraphs 1449 and 1547. The first of these was Walter L. Ehrich, the president of the Ehrich Galleries, associated with the business of the importer. The witness identified the exhibits and stated that they were from the second importation, including those shown in the photographic exhibits. This witness stated that he was acquainted with Henri Navarre, and that Navarre was a "very famous French sculptor." The witness then detailed several works of *sculpture* which Navarre had constructed of stone or bronze. Ehrich stated that he had made a study of art, principally by visiting museums, buying and selling objects of art, going to lectures, reading books and visiting artists' studios. He stated that in his opinion the articles represented by the exhibits were works of art. A part of his examination was as follows:

X Q. From your knowledge of art, when was the first time you heard of glass being *sculpture?*—A. About, let's see, I think it was in 1917 or 1918, that 's when the market began working in *glass sculpture.*

X Q. Do you know how they are made?—A. Yes.

X Q. How?—A. The molten mass of metal, or glass rather, which is treated as a metal, is modeled by wooden spatulas by the artist himself. He works it with his wooden spatula, just as a *sculptor* or the same *sculptor* may work and model a piece of gold or wax, exactly the same principle. (Italics ours.)

W. Frank Purdy testified that he was acting as executive secretary for the Antique and Decorative Art Studios, and that before his service as such he was owner and director of the School of American Sculpture, and was one of the original founders of the Grand Central Art Gallery in charge of sculpture, and before that was director of the Gorham Galleries of Sculpture for several years; that he had written and lectured on sculpture and had specialized in the development of American sculpture, and had lectured on art at various places. He stated that he had seen the exhibits in this case at an exhibition and that in his opinion they were works of art. He stated, in giving his reasons for this conclusion:

Q. Is it based upon things within your own knowledge?—A. Yes. As an example, I get a thrill out of all the Navarre things because it is to me, a unique medium for rendering the *sculptor's* art. (Italics ours.)

He further stated that he had never seen any examples of Navarre's work in museums, and that he did not think they had been on the market.

Charles Messer Stow stated that he was connected with the antiques and decorations department of the New York Sun, and had been for four years; that he had had a great deal of experience with glass and had specialized in glass from a decorative and antiquarian standpoint for about 11 years; that he had studied and read on the subject of glass and had lectured thereon. As to the exhibits, he expressed the opinion that they were works of art. He stated further that in his opinion it would take an artist to design and conceive the decorations of the imported articles.

Some question has arisen as to the weight to be given to the photographic exhibits, Illustrative Exhibits A, B, and C. This court has never held such photographs to be inadmissible, but has indicated, in some cases, that such photographs, standing alone, are not sufficient upon which a witness, without other knowledge on the subject, may pronounce the objects shown by such photographs to be works of art. This was the holding in *Marshall Field* v. *United States* and *Friedlaender Co.* v. *United States, supra.* However, such was not the case here. At least two of the witnesses had seen the imported articles and knew of their method of construction. The photographs were admissible, to be given such weight as they are entitled to in connection with the other testimony, as to the character of the imported articles.

Observers of the imported articles will doubtless differ as to their artistic quality. However, a view of them results in the conclusion that they lack much of the aesthetic appeal which is ordinarily associated with works of the fine arts. Laying aside the mechanical dexterity which is used by the maker of these articles in modeling and shaping a molten mass of glass, and eliminating the secret processes which he has invented, of adding color and air bubbles, we

think it may be fairly said that these articles have no greater appeal to the sense of the beautiful and artistic than do other glass articles made by skilled artisans.

We are of the opinion that, under the uniform decisions of this court, these imported articles belong, not in the classification of works of art, but rather in the classification which relates to articles of the decorative arts.

The testimony of the witnesses and the conclusion of the court below seem to have been along the line that these articles come within that part of the language of paragraph 1449 of the Tariff Act of 1922, and of paragraph 1547 of the Tariff Act of 1930, namely, "statuary, sculptures, or copies, replicas, or reproductions thereof."

In *United States* v. *Olivotti & Co.*, 7 Ct. Cust. Appls. 46, T.D. 36309, we had before us a marble font, two marble boxes and stands, and two marble seats, which were classified as manufactures of marble and claimed to be dutiable under paragraph 376 of the tariff act of October 3, 1913, the predecessor of said paragraphs 1449 and 1547. These were held by the trial court to be works of art, that is, sculptures, following the opinion of the Board in the protest of *Downing & Co.*, T.D. 35564, where a facsimile of a so-called "Greek Temple" was imported, about which it was said that if the same was dutiable as a work of art at all, it was because it was a sculpture. In deciding the *Olivotti* case, this court discussed, at some length, the meaning and language of the works of art paragraph involved. Smith, Judge, delivering the opinion of the court, said, in part, as follows:

It appears from the photographs in evidence that the font is a plain marble basin, supported by a long, slender, tapering column, which is sustained by a short, round pillar of smaller diameter. The short pillar springs from an annular base which rests on a plain, square slab of marble. The surface of the long, tapering column is ornamented by carvings suggestive of leaves. The font was made by Molonari, a sculptor, and was copied by him from an original found in one of the churches of Italy; but whether the original was the work of a sculptor does not appear. The production is the work of a sculptor. It is fashioned from the solid marble. It may be conceded that it is artistic and beautiful. Nevertheless, those conditions, or, better said, those distinguishing features of the article, are not sufficient of themselves to constitute a sculpture. Sculpture as an art is that branch of the free fine arts which chisels or carves out of stone or other solid material or models in clay or other plastic substance for subsequent reproduction by carving or casting, imitations of natural objects, chiefly the human form, and represents such objects in their true proportions of length, breadth, and thickness, or of length and breadth only. Standard Dictionary; Century Dictionary; United States v. Downing & Co. (6 Ct. Cust. Appls., 545; T.D. 36197); Stern v. United States (3 Ct. Cust. Appls., 124, 126; T.D. 32381); United States v. Baumgarten (2 Ct. Cust. Appls., 321, 322; T.D. 32052). It can not be said that the font, considered as an entirety, portrays any natural object. The surface of the tapering column which supports the plain marble basin is carved, it is true, with a representation suggestive of leaves, but that representation is so plainly ornamental and so clearly incidental that it can scarcely be regarded as sculpture and much less as giving that status to the

whole article. Indeed, as appears from the photograph in evidence and the testimony in the case, that which makes the font artistic and beautiful is the purity of its lines and its just proportions, *and not the carving on the column*, which we think must be regarded at best as decorative and not sculptural art.

Finding, as we do, that the font is not sculpture, the next question which arises is, Can it, because of its beauty and artistic character, be classified as a work of art within the meaning of paragraph 376? We think not. In our opinion, the expression "works of art" as used in paragraph 376 was not designed by Congress to cover the whole range of the beautiful and artistic, but only those productions of the artist which are something more than ornamental or decorative and which may be properly ranked as examples of the free fine arts, or possibly that class only of the free fine arts imitative of natural objects as the artist sees them, and appealing to the emotions through the eye alone. The potter, the glassmaker, the goldsmith, the weaver, the needlewoman, the lace maker, the woodworker, the jeweler, all produce things which are both artistic and beautiful. It can hardly be seriously contended, however, that it was the legislative purpose to include such things, beautiful and artistic though they may be, in a provision which, as shown by its history and the enumeration therein contained, was intended to favor that particular kind of art of which painting and sculpture are the types. See Lazarus *v.* United States (2 Ct. Cust. Appls., 508, 509; T.D. 32247); United States *v.* Downing (6 Ct. Cust. Appls., 545; T.D. 36197).

That everything artistic and beautiful can not be classed as fine art was well established in United States *v.* Perry, which involved the classification of painted glass windows on which were represented by artists of superior merit, pictures of the saints and other biblical subjects. In that case it was held by the Supreme Court that the windows were not paintings and that, although they were artistic in the sense that they were beautiful, they were representative of the decorative and industrial rather than of the fine arts. United States *v.* Perry (146 U.S., 71, 74).

Notable in this decision is the definition of sculpture. Measuring the articles here involved by the language of Judge Smith above quoted, it is at once evident that the imported articles are not sculptures. This court has never departed from its views as expressed in the *Olivotti* case, and has always drawn a clear distinction between works of the free fine arts and those which are properly classifiable as the work of the artisan. Our last expression on the subject is *United States* v. *Columbo Co.*, 21 C.C.P.A. (Customs) 177, T.D. 46510 in which case *certiorari* was denied by the Supreme Court, October 16, 1933, 290 U.S. 673.

Paragraph 218 of the Tariff Act of 1922 provides for glass articles of all kinds—

blown or partly blown in the mold or otherwise, or colored, cut, engraved, etched, frosted, gilded, ground * * * painted, printed in any manner, sand-blasted, silvered, stained, or decorated or ornamented in any manner.

Paragraph 218 (f) of the Tariff Act of 1930, under which a part of these articles were classified, has substantially the same language. This definitely includes the articles in issue here, unless by virtue of the particular quality of the same they may be removed into the classification of works of art. The thought occurs that if these,

because they are the handiwork of an artist, are thus removed, why should other more artistic and beautiful creations of the glass blower not be likewise removed?    It must be admitted that such artistic and beautiful creations as were considered in the *Olivotti* case may be created by the artisan, and it must be further conceded that it was intended that these dutiable provisions for glassware, to which attention has just been called, were intended to cover the same.    Does the mere fact that an artist makes one article and an artisan makes another, render one a work of art and the other a manufacture of glass? We cannot come to this conclusion.

The courts, so far as we are advised, when called upon to construe provisions of tariff acts relative to works of the fine arts, have always entertained the view that the fine arts are such as are principally exemplified by painting and sculpture.    The Supreme Court, in *United States* v. *Perry*, 146 U.S. 71, expressed its views thus; in making an analysis of the distinctions between works of art and art objects, under the tariff act of October 1, 1890:

For most practical purposes works of art may be divided into four classes:
1. The fine arts, properly so called, intended solely for ornamental purposes, and including paintings in oil and water, upon canvas, plaster, or other material, and original statuary of marble, stone, or bronze.    These are subject to a duty of 15 per cent.
2. Minor objects of art, intended also for ornamental purposes, such as statuettes, vases, plaques, drawings, etchings, and the thousand and one articles which pass under the general name of bric-a-brac, and are susceptible of an indefinite reproduction of the original.
3. Objects of art, which serve primarily an ornamental, and incidentally a useful purpose, such as painted or stained glass windows, tapestry, paper hangings, &c.
4. Objects primarily designed for a useful purpose, but made ornamental to please the eye and gratify the taste, such as ornamented clocks, the higher grade of carpets, curtains, gas-fixtures, and household and table furniture.

Since the rendition of that opinion, this court has been called upon on numerous occasions, to construe similar provisions of succeeding tariff acts.    In none of these cases have any of these statutory provisions ever been extended to cover anything further than such works of the free fine arts as are specifically named in the same, such as paintings and sculpture, or, latterly, etchings or drawings.    While we have held that the word "including" used in these provisions in connection with and following the words "works of art", is a term of specification rather than of limitation, *Petry Co.* v. *United States*, 11 Ct. Cust. Appls. 525, T.D. 39666, no case can be found where they have been extended to include merely the decorative arts.

It may be said that vases have been found to be classifiable as such works of the fine arts.    An example of such a holding is *United States* v. *Baumgarten & Co.*, 2 Ct. Cust. Appls. 321, T.D. 32052.    The vase in that case, however, was of marble, with representations of human

figures in relief thereon, executed by an artist, and was held by us to be a work of the free fine arts because it was a sculpture.

There can, however, be no such holding here, because the articles before us in no respect respond to the definitions which we have repeatedly given to the term "sculptures."

If they are not sculptures, then in what respect do these objects constitute works of art? Certainly not because they were made by an artist, because an artist may make things which are not works of art. Certainly not in their coloring or air bubbles, for these will not give them the character of works of art. *United States* v. *Perry, supra.* Certainly not in their decorative effect, for in that respect they cannot be distinguished from the decorative effects of the carved marble column in *United States* v. *Olivotti, supra,* of which it was said, "The surface of the long, tapering column is ornamented by carvings suggestive of leaves."

On the record before us, the best that can be said of these imported objects is that Navarre and some of his coworkers have discovered a novel method of fabricating glass vessels. Because of their method of manufacturing and unique appearance, they appeal to the taste of some. However, the art which produces them is decorative, and not such as has always been held to be the practice of the free fine arts.

The judgment of the United States Customs Court is *reversed* insofar as it sustains the protests against the collector's classification of "the merchandise in controversy which is represented by samples introduced as Exhibits 1, 2, and 3." In other respects, the judgment is *affirmed.*

GARRETT, Judge, dissents.

### DISSENTING OPINION

BLAND, Judge: I must respectfully dissent from the decision of the majority, which is obviously the result of much sincere and earnest work and research in a field made difficult by confusing statements made, and conclusions arrived at, by this court in the past, some of which statements and conclusions have resulted in decisions heretofore handed down, but not controlling here, which have led this court, I think, into an anomalous position on the subject of art.

The facts stated in the majority opinion, I think, inadvertently fail to fully state all the record facts which tend to support the importer's position in this case, but space does not permit here a detailed statement of the evidence. I will content myself by saying that the record shows that the customs officials passed the importation as articles of blown, decorated, or colored glass, dutiable in part at 60 per centum and in part at 55 per centum under the decorated-glass paragraphs of the two tariff acts involved, and gave as the reason for doing so, under the 1930 act, the decision of this court in the case of

*Frei Art Glass Co.* v. *United States,* 15 Ct. Cust. Appls. 132, T.D. 42214, which case held mosaic paintings of high artistic merit not to be dutiable as works of art under paragraph 1449, Tariff Act of 1922, for the reason that they were of glass. Obviously, the customs officials in the instant case believed that the ruling as to glass mosaics would be followed as to glass vases, no matter how made, and the Government, in defending the position of the customs officials in this court, relies not upon the fact that the imported articles in this instance were not shown by the record to be works of art, in fact, but that, being of glass, they were not works of art in a tariff sense, and that an examination of the exhibits discloses that they are neither beautiful nor artistic.

The proof in this case is all one way—three highly competent witnesses, whose qualifications are not fully stated by the majority, overwhelmingly sustained the importer's position that the articles at bar are works of art of a very high order of artistic merit; that they are not the work of an artisan; are not blown or mechanically produced but are made with wooden spatulas—"*the only instrument*" *used;* and are not produced in this country. Two of the vases are entered for duty at a value of 2,400 francs. These important facts of record stand unrefuted by any witness, but, in my opinion, they have been ignored by the majority in such a way as to form a precedent, the consequences of which may not be fully apparent now.

After reading the majority opinion over many times, I find it very difficult to determine the exact basis of the decision, and it is difficult to write a satisfactory dissenting opinion without being able to definitely point out the reasons assigned by the majority for bringing it to the conclusion reached, which I respectfully characterize as erroneous, as I shall attempt to show more particularly.

First. Is the result based on the fact that the articles are of glass? It would hardly be admitted by any of my associates forming the majority that this was the basis of its decision, although we find in the opinion the following: "* * * why should other more artistic and beautiful creations of the *glass blower* [italics mine] not be likewise removed?" Other places in the opinion, the glass character of the articles seems to be somewhat emphasized.

Second. Does the basis of the decision of the majority rest upon the fact that there is no artistic merit in the articles before us, notwithstanding the complete record which overwhelmingly shows that the articles are "decidedly works of art"? I am inclined to think that if there is any controlling and definitely assigned reason which brought the majority to its conclusion, it is that the articles lack artistic merit, when tested by the knowledge of the majority as to what is or is not artistic, because I find in the opinion the following:

Observers of the imported articles will doubtless differ as to their artistic quality. *However, a view of them results in the conclusion that they lack much*

*of the aesthetic appeal which is ordinarily associated with works of the fine arts.* Laying aside the mechanical dexterity which is used by the maker of these articles in modeling and shaping a molten mass of glass, and eliminating the secret processes which he has invented, of adding color and air bubbles, we think *it may be fairly said that these articles have no greater appeal to the sense of the beautiful and artistic than do other glass articles made by skilled artisans.* (Italics mine.)

Toward the end of the opinion is the following:

On the record before us, the best that can be said of these imported objects is that Navarre and some of his coworkers have discovered a novel method of fabricating glass vessels. Because of their method of manufacture and unique appearance, they appeal to the taste of some. However, the art which produces them is decorative, and not such as has always been held to be the practice of the free fine arts.

Third. Is it possible that the majority has in mind the fact that these vases are articles of utility merely because they are vases and necessarily have top openings? See *United States* v. *Royal Copenhagen Porcelain, Inc.*, 17 C.C.P.A. (Customs) 464, T.D. 43929, where vases were held to be paintings. In the opinion of the majority in the instant case is the following paragraph:

There is no evidence in the record that these objects are not articles of utility.

Surely, this is not one of the controlling reasons of the decision, because those constituting the majority have sufficient courage to have definitely stated this as a reason if they felt fully justified in that conclusion. If it is not a reason for holding the articles at bar not works of art, the expression should not have found its way into the opinion. Suffice it to say that the decisions of this court would preclude the conclusion that vases, such as these, the inventoried value of two of which was as much as 2,400 French francs, were utilitarian in character. In *United States* v. *Baumgarten & Co.*, 2 Ct. Cust. Appls. 321, T.D. 32052, the court said:

The invoice value of the article is $453, and it is apparent that it has no utilitarian value at all proportionate to this cost.

Fourth. The decision of the majority seems to rest partly upon the fact that the testimony and the conclusion of the court below would indicate that the vases were thought to be sculptures, and that under *United States* v. *Olivotti & Co.*, 7 Ct. Cust. Appls. 46, T.D. 36309, they cannot be so regarded.

Under three of the four subdivisions above indicated, to wit, articles of glass, articles lacking artistic merit, and sculptures, I now propose to point out that under either or all of these assumed grounds of decision the result arrived at is wholly unwarranted. I have sufficiently discussed the third subdivision—utility.

The *Frei Art Glass Co.* case, *supra,* was the anomalous result of giving too much weight to the letter of general expressions used in decisions, which led to a drifting away from controlling principles. In

that case, certain language used in the *Olivotti* case, *supra*, written by Judge Smith, was, I respectfully submit, misinterpreted and erroneously applied. In the *Frei Art Glass Co.* case, Judge Smith, the author of the *Olivotti* opinion, specially repudiated the construction which later led this court to the erroneous and wholly unjustifiable conclusion that a beautiful glass mosaic, even though a work of art possessing artistic merit, was not to be regarded as a work of art within the dutiable provisions of the paragraph because it was a glass mosaic or a painting in glass, and that Congress did not intend that such a work of art in glass should be admitted at the lower art rate, evidently because of its desire to protect the glass workers of this country. See also the majority and concurring opinion in *Petry Co.* v. *United States*, 11 Ct. Cust. Appls. 525, T.D. 39666. Later, Congress having made no substantial change in the dutiable works of art provision, this court held that under the doctrine of legislative adoption of judicial interpretation, mosaics were not works of art for tariff purposes, and I concurred in the conclusion. Probably even then we gave too much weight to a rule of interpretation in view of the fact that owing to the peculiar subject matter involved, art, Congress is rarely urged to make needful changes. But, at any rate, there was no legislative adoption rule that could apply to the Henri Navarre vases at bar, and the majority has not attempted to apply such a rule.

After exhaustive research, I unqualifiedly state that I know of no authority or any court decision, except the line of decisions above suggested, that holds that an artistic article created by an artist, in glass, may not be regarded as a work of art under the *dutiable* provisions of the acts under consideration. Indeed, under the weight of authority, such an article may, possibly, be a work of art under the *free* provisions of the tariff acts. I am not sure, however, that this is true, and the issue is not presented here. Both the free and the dutiable provisions were intended to encourage art and art education in this country. The vases at bar are originals. They are the works of a great artist. They are modeled with spatulas, as is clay or wax. They have the color, lines, and general appearance which give them such artistic character as to cause three competent judges of art to testify to their being works of art, which testimony stands undenied. So much for the glass character of the article.

As above indicated, it seems that the majority holds that the articles do not possess sufficient artistic merit to warrant their being held dutiable under the works of art provisions under consideration, based wholly upon the lack of aesthetic enjoyment which the individual judges constituting the majority receive from looking at the articles. In customs jurisprudence, courts have the right to ignore expert testimony and the testimony of those best informed on the subject matter, if the exhibit in evidence clearly and unquestionably

refutes such testimony, but the case at bar is no place for the application of such a rule, and I maintain that the application made of it in this case is wholly unprecedented, and is clearly unjustifiable, in view of the complete, convincing, and undisputed evidence in the case. Moreover, in my view, an examination of the articles at bar supports rather than refutes the testimony. It is in this respect that I think the decision of the majority does the greatest harm. Is it possible that a bare majority of the judges of this court may ignore the testimony of those most advised on the question, reverse the finding of the trial court, and set up its own standards as to what constitutes artistic merit, and thus, in my judgment, thwart the clearly indicated purpose of legislation with respect to art? I do not want to assume such a responsibility and will not do so. I freely admit, and I think my very sincere associates would do the same, that I know no more about artistic merit than does the average layman, and what might appeal to me as being an artistic creation of great merit, if appearance alone controlled, might not meet the test at all, and vice versa.

One statement of the majority opinion is to the effect that by reason of "the unique appearance" of the articles at bar "they appeal to the taste of some." I presume this refers to such persons as the three exceptionally well qualified witnesses who testified as to the artistic merit of the articles at bar, and as to the high standing of Henri Navarre, their creator. I admit that the appearances of the vases are unique, but a great sculptor made them, and the record indisputably credits them with possessing decided artistic merit. I dare not attribute the finding of artistic merit in this kind of art to bizarre or distorted tastes of artists or art admirers. All genius, and especially that which relates to art and music may, as is frequently suggested, possess a certain degree of unbalanced mentality, but we cannot condemn art for tariff purposes on account of this fact.

The work of many famous modern artists may not fully satisfy all the longing I may have for the aesthetic qualities in artistic objects, but tariff acts are made for the future and the present, and we should be controlled in our conclusions not by any antiquated notions we might have, or by what pleases us, but our inquiry should be limited to what is the importation on the date imported, as disclosed in the opinion of those most learned on the subject.

The opinion of the majority as a whole would seem to imply, if not definitely hold, that sculpture must portray natural objects in their true proportions (from quotation in *Olivotti* case). If this be true in sculpture, it would be equally true in painting. If the same adherence to the letter of a decision is hereafter followed by this court as has been done with respect to mosaics, as is above pointed out, it is easy to see where following this principle would result in no impressionistic art or allegorical art, either paintings or sculp-

tures, being regarded by the courts as works of art. It is a matter of common knowledge that the greatest present-day interest in art and the greatest commercial activity in connection with art involves modern art which includes impressionism and post-impressionism. See "post-impressionism", Webster's New International Dictionary (1932) under "new words." Also see Henry R. Poole's "Modern Art, etc.", which is a criticism of modern art tendencies, and Sheldon Cheney's "Primer of Modern Art" which defends present day tendencies.

Modern suggestive art does not portray things in their natural form, but merely portrays objects in such form, sometimes distorted or incomplete, as will be suggestive of the idea which is to be conveyed. Modern classical music now encourages the occasional intentional use of discords. These innovations by modern artists seem to be in harmony with the tendency of the times, and it is the kind of art which possesses such elements of eccentricity that holds the stage today. It has its friends and its enemies, but the enemies of suggestive sculpture and painting all agree that it is art, has artistic merit, when done by a good artist, but contend that it is not as good from an artistic standpoint as realistic art.

Now, did Congress in the Tariff Acts of 1922 and 1930 contemplate that all art which does not portray *in the natural form* was not needed in this country for the purpose of art education, and that it should not be regarded as art for tariff purposes? Is it the holding of the majority that the works of Brancusi, which include the sculpture known as the "Portrait of Madame Pogany" (see Encyclopaedia Britannica, vol. 20, fig. 3 of pl. X, following p. 206) or his "Bird in Space" (fig. 10, pl. XIII, opposite p. 231), or the works of Picasso, Matisse, Biddle, and all the modern art of Russia, Spain, and elsewhere, are to be denied an art classification when imported into this country, because we, as judges of the court, may not like certain kinds of modern art, and can get real enjoyment only from the more conservative realistic art?

It must be remembered that when the words "representing such objects in their true proportions" found their way into the *Olivotti* case, which words, in turn, were taken from authorities of earlier date, impressionistic or suggestive art was not troubling our customs officials as it is in more recent times.

The "Bird in Space", or the same or a similar article styled the "Bird in Flight", by Brancusi, was the subject matter of litigation in the United States Customs Court in *Brancusi* v. *United States*, T.D. 43063, 54 Treas. Dec. 428. From the decision of the trial court in that case, no appeal was taken. Judge Waite there called attention to the tendency of modern art, quoted the definition of "sculpture" in the *Olivotti* case, pointed out that the "Bird in Flight" did not measure up to the standard of the definition, but held, nevertheless, that it was a

sculpture and free of duty. The United States Tariff Commission in Summary of Tariff Information, 1929, volume 2, page 2668, called the attention of Congress to this decision, quoted the *Olivotti* definition, and pointed out Judge Waite's decision on modern art. Congress made no change in the Tariff Act of 1930. The subject of legislative adoption of judicial interpretation in this instance might also have been given some consideration by the majority.

If it is the intention of the majority to definitely hold that the work of a noted sculptor, whose conception finds expression in what we might regard as a somewhat distorted form, or an allegorical form, or a suggestive form, then it is possible that some of the articles at bar might be denied classification as works of art. Exhibit 3 does not fall in this class. It has leaves and stems plainly sculptored on the sides from top to bottom. Exhibits 1 and 2 have what are probably suggestive stems and branches. Exhibit C has the body, wings, neck, head, bill, and eyes of some kind of fowl in an interesting pose. Its likeness to any particular fowl is only in its suggestion, but it is far more suggestive of a fowl than is the "Bird in Flight" suggestive of a bird, and comes nearer representing the natural proportions of the object than do most examples of impressionistic art. All the other articles contain elevated ornamentations which may be suggestive of natural objects. The proof in the record shows them all to be works of art.

The majority concludes that because the articles were made by Henri Navarre, a "very famous French sculptor", and because the witnesses referred to his *sculpturing* in glass, and by reason of statements in the opinion of the court below, the witnesses and the court regarded the vases as a work of art solely because they were sculpture. I have not the slightest doubt that they are sculpture, not only in a broad sense, but in a strict tariff sense (if there is a distinction to be made), but surely the majority does not base its opinion upon the fact that they must be sculpture to be works of art within the provisions of the paragraphs in the two acts involved. The paragraphs provide for works of art, irrespective of sculpture and painting, and this court has held definitely and uniformly that the language "works of art" is not limited by the phrases which follow and which refer to painting, sculpture, etc., and that a work of art may be dutiable under that provision without being any of the things named thereafter. *Petry Co.* v. *United States, supra; United States* v. *John Wanamaker*, 19 C.C.P.A. (Customs) 229, T.D. 45336. The importer here contends only that they are works of art. A tapestry may be a work of art, although it is neither a sculpture nor painting. The articles before us may be works of art because they are made by an artist, possess artistic merit, and cannot be produced by an artisan, and this is true even though it was held that they do not meet minor requirements of

any definite definition of sculpture for tariff-duty purposes.   In other words, the process of making them might make them works of art without making them sculptures in the narrow sense.

But, even if we were justified in holding that the vases at bar are only works of art, if they are sculptures in a tariff sense (and I am not even admitting of the possibility of the correctness of this assumption), the majority nevertheless would have no ground or basis for the holding that they are not works of art.   Sculpture may be in the round or in the relief.   See *United States* v. *Baumgarten & Co., supra;* Webster's New International Dictionary (1932); Encyclopaedia Britannica.   If it is in the round or solid form, it has three dimensions—length, breadth, and thickness.   It is in relief when only the length and breadth are expressed and the depth is abridged.   Therefore, a given slab of marble or glass, terra cotta, etc., upon which is sculptured (and I use that word advisedly) figures not shown in their true depth, is a sculpture.   This fact was recognized in the *Olivotti* case, relied upon by the majority, where Judge Smith said:

\* \* \*   Sculpture as an art is that branch of the free fine arts which chisels or carves out of stone or other solid material or models in clay or other plastic substance for subsequent reproduction by carving or casting, imitations of natural objects, chiefly the human form, and represents such objects in their true proportions of length, breadth, and thickness, *or of length and breadth only.* \* \* \* (Italics mine.)

True enough, the *Olivotti* case, following certain definitions of sculpture set out in *Lazarus* v. *United States,* 2 Ct. Cust. Appls. 508, T.D. 32247, which decision involved a paragraph wholly and completely unlike the one involved here, seems to imply that not only must a sculptured article represent a natural object, but that the article in its entirety should represent the natural object as is true in statuary.   If that thought were applied to the vases at bar, it would mean that each vase as a whole must be in the shape of a natural object in order to be sculpture.   If so, this court was wrong in *United States* v. *Baumgarten, supra,* and it was also wrong in holding that a vase, with a painting in mineral on it, was a painting in *United States* v. *Royal Copenhagen Porcelain, Inc., supra.*   In *Stern* v. *United States,* 3 Ct. Cust. Appls. 124, T.D. 32381, this court held dutiable as sculpture (in relief) vases, upon which figures of natural objects had been sculptured.   See also *United States* v. *Sterling Bronze Co.,* 4 Ct. Cust. Appls. 389, T.D. 33835, where ornamental marble columns were held to be sculpture.

Obviously, the sculptured figures on the vases at bar were, by the majority, placed in the same category as the "carvings suggestive of leaves" on the tapering columns of the font in the *Olivotti* case.   In that case it was held that the decorative figures on the carved marble columns were only decorations.   It is true, as above stated, that in the *Olivotti* case there is language used which would seem to imply that the article as a whole, and not the sculpturings thereon, must represent

natural objects. But, since the opinion holds that the carvings were only decorations, it is not necessary to interpret the opinion as being a holding which would be entirely at variance with all decided cases. If it is contrary to all decided cases, in this respect, it should not be followed. To hold that the article itself must, as a whole, represent a natural object in its natural proportions, would be to declare that there could be no sculpture on any other object, and, therefore, sculpturing in relief for tariff duty purposes would be outlawed.

Now, let us assume, however, that in order to be sculpture (bear in mind that it is not necessary for this to be sculpture to be a work of art under the paragraphs involved), the article must contain the representation of a natural object, such as human beings, animals, plant life, etc. As far as I am able to observe, each and every one of the articles at bar fully complies with this requirement. The green shaded vases and certain others of the importation may portray leaves and branches only in an impressionistic way or by a mere suggestion of them, but they are certainly there. Moreover, Exhibit C, as stated in the majority opinion, appears to be the representation of some kind of bird. The neck, head, eyes, bill, body, wings are all portrayed in a somewhat suggestive way. This sculptured article as a whole represents an animate natural object. Exhibit 3 has well defined leaves and stems, in their natural shape, covering a large portion of two sides of the vessel and each of the other articles has raised portions which are probably suggestive of some natural object. In fact, it is stated in the majority opinion that Exhibit 3 has the representation of a compound leaf on each side. These features in the articles, in my opinion, are not minor or inconsequential ones in giving character to the articles.

Now, to recapitulate, it may be said that the majority, without assigning sufficient reasons, and without assigning any reasons very definitely, holds that the original works of the great sculptor, Henri Navarre, are not works of art, but are the work of the glass decorator, notwithstanding the fact that there is a complete agreement among artists that they possess great artistic merit and could not have been produced by an artisan.

The erroneous position which this court originally took on the subject of glass art was prompted, as is shown by the decisions, by the belief that Congress desired to protect the American glassworker and not the American artist. What earthly protection could a high duty on these highly artistic articles give to the glassmaker or glassblower in the glass factories of the United States? No one here has done or can do this kind of work. It is exactly the character of importation that Congress would seek to favor for the purpose of art education. It is pointed out in the majority opinion that in *United States* v. *Columbo Co.*, 21 C.C.P.A. (Customs) 177, T.D. 46510, certiorari was

denied by the Supreme Court. The denial of a writ of certiorari imports no expression of opinion on the merits of the case. *United States* v. *Carver*, 260 U.S. 482, 490. Unfortunately the Supreme Court passes upon but a very few customs cases and those must be regarded as matters of grave importance even to cause a thorough consideration of the subject by Congress. Occasionally the Supreme Court does take a case of this character and if it had taken the *Columbo Co.* case, I feel sure that the position of this court would not have been approved, unless it was approved upon the doctrine of legislative adoption of judicial interpretation, which is not in this case.

It is my view that every article at bar is a work of art and should be classified as claimed by the importer, and that that portion of the judgment of the court below which held certain articles to be works of art should be affirmed, and that the court's action in approving the collector's classification of a portion of the articles should be reversed.