STERN v. UNITED STATES (No. 663).[1]

LIMESTONE ARTICLES—SCULPTURES.

The facts disclosed by the record are meager, but are deemed sufficient to bring the production of designated articles of the importation within the provisions of the law relating to sculptures; and in these designated instances the goods were dutiable as sculptures not specially provided for, under paragraph 470, tariff act of 1909.

United States Court of Customs Appeals, April 1, 1912.

APPEAL from Board of United States General Appraisers, Abstract 25180 (T. D. 31450).

[Modified.]

*Comstock & Washburn* for appellant.

*William L. Wemple*, Assistant Attorney General (*Leland N. Wood* on the brief), for the United States.

Before MONTGOMERY, SMITH, BARBER, DE VRIES, and MARTIN, Judges.

DE VRIES, Judge, delivered the opinion of the court:

Appeal from a decision of the Board of General Appraisers involving the dutiable classification of a variety of stone jardinieres, vases, and figures.

The case involves the application of a very narrow line of distinction between what does and does not constitute a sculpture, as that term is used and modified in paragraph 470 of the tariff act of 1909.

The board, as to the merchandise the subject of this appeal, which was but part of that covered by the invoice, overruled the protest of the importers.

While a number of such articles are the subject of this appeal, those concerning which, in our opinion, the same is well taken will be enumerated. As to all others, from the conceded description by appellant, the importer below, in their brief, we think the decision of the board correct.

Those enumerated are as follows:

1. Those jardinieres in cases 716 and 717, as designated upon the invoice, valued at $212.30 each, carved in semicircular shape out of a solid block of stone, each having carved upon it a head which is a composite design combining a human, lion's, and ram's head.

2. The single vase contained in case 718 of the invoice, with base therefor in case 730, 24 inches high by 15 inches in width, valued at $260.55, carved and surrounded or entwined by garlands of leaves chiseled out of stone.

3. Vases of like size to the foregoing in cases 721, 722, and 723, with covers and bases in cases 728 and 729, valued at $144.75 each, and each made of solid blocks of stone having carved on each a figure of a woman on one side and that of an alligator on the other.

4. The contents of cases 724 and 725, consisting of two carved balls of solid blocks of stone 2 feet in diameter, designed with tracery

---

[1] Reported in T. D. 32381 (22 Treas. Dec., 564).

of rushes or other vegetation reaching up the sides, and each ball resting upon a carved boa constrictor or reptile.

The competing paragraphs of the tariff law involved in the issue here presented are as follows:

114. Freestone, granite, sandstone, limestone, and all other monumental or building stone, except marble, breccia, and onyx, not specially provided for in this section, hewn, dressed, or polished, or otherwise manufactured, fifty per centum ad valorem; unmanufactured, or not dressed, hewn, or polished, ten cents per cubic foot.

470. * * * And sculptures, not specially provided for in this section, * * * but the term "sculptures" as used in this act shall be understood to include only such as are cut, carved, or otherwise wrought by hand from a solid block or mass of marble, stone, or alabaster, or from metal, and as are the professional production of a sculptor only * * *.

It will be noted that the articles not being of marble, breccia, onyx, alabaster, or jet, paragraph 112 of the act providing for such manufactured wholly or partly in monuments, benches, and vases, and into other articles, is not invoked, and the sole competing paragraph is the one of lesser specifications, 114, *supra.*

The crucial point in the case, however, is whether or not the articles are within the terms of paragraph 470, as disclosed by this record and the proofs therein contained, including the photographs of the articles accompanying the same.

In order to be included within the terms of paragraph 470, it is obvious that the importation must be, first, in character, design, and merit of artistic production *per se,* a "sculpture;" and, secondly, being deemed such by reason of its intrinsic artistic character, that it must be "the professional production of a sculptor *only.*" The protestant, in cases such as these where the articles have been returned for duty by the collector as not such, has thereby imposed upon him the duty of proving by convincing evidence the affirmative of these two propositions.

The Board of General Appraisers did not consider or decide whether or not it was shown by the record that these articles were the professional production of a sculptor only, but seems to have rested decision upon the proposition that such articles were not "sculptures."

While the enumerated articles may be of an inferior class of sculptures, we think they fairly come within the accepted legal and lexicographic definition of that term. Of course, not every product of a professional sculptor would be classed as a sculpture. Limitations of this kind were defined by this court in the recent case of Lazarus, Rosenfeld & Lehmann *v.* United States (2 Ct. Cust. Appls., 508; T. D. 32247). An instructive discussion of the subject is found in the opinion of the Board of General Appraisers in that case, G. A. 7174 (T. D. 31331). The board, speaking through Judge Waite, said:

We do not conceive that every piece of carving which is made under the supervision of a professional sculptor or by his hand is brought within the meaning of the term "sculptures" in this act. We conceive it to mean that which is cut or carved into

some artistic design deserving a place in the higher order of art objects. Indeed, we think we are authorized in saying, having in mind the definitions of "sculptures" given in the dictionaries and by the various writers upon the subject, that the term "sculptures" in this act is intended to cover only those works of art which portray objects representing human or animal forms, as distinguished from architectural specimens and conventional designs. We are unable to find that it was the intention of the lawmakers to include within the terms of this paragraph all forms of carving in marble made in the *atelier* of a professional sculptor by artisans, with or without the aid of mechanical devices, including such articles as are in question in this case.

The dividing line between what is intended to be covered by the word "sculptures" in the law and that which is excluded may well be, we think, where the representations of human or animal forms end.

We are not prepared to assent to the doctrine that sculpture is confined to a representation of human or animal figures or statues alone. It is notably true that some of the most magnificent productions of professional sculptors which have attracted the attention and admiration of the world were found in the buildings and museums of countries the beliefs of which teach it a sacrilege to portray human forms.

The history of sculpture teaches us that the influence of the various ages and times upon the arts of the day varied the character of the contemporary sculpture. Thus because it partook of idolatry sculpture in the round during the fourth and fifth century was indeed rare. In the sixth century Byzantine art confined itself to, we are told, splendor and sumptuousness rather than monumental imagery. In the Encyclopedia Britannica, eleventh edition, article "Sculpture," wherein the history is treated, it is stated:

Sculpture in the round, with its suggestion of idol worship which was offensive to the Christian spirit, was practically nonexistent during this and the succeeding centuries, although there are a few notable exceptions, like the large bronze statue of St. Peter in the nave of St. Peter's in Rome, which is probably of fifth-century workmanship and has much of the repose, dignity, and force of antique sculpture.

\*     \*     \*     \*     \*     \*     \*

In the sixth century, under the Byzantine influence of Justinian, a new class of decorative sculpture was produced, especially at Ravenna. Subject reliefs do not often occur, but large slabs of marble, forming screens, altars, pulpits, and the like, were ornamented in a very skillful and original way with low reliefs *of graceful vine plants*, with peacocks and other birds drinking out of chalices, all treated in a very able and highly decorative manner \* \* \*. The school of sculpture which arose at Byzantium in the fifth or sixth century was therefore essentially decorative and not monumental, and the skill of the sculptors was most successfully applied to work in metals and ivory, and *the carving of foliage* on capitals and bands of ornaments, possessed of the very highest decorative power and executed with unrivaled spirit and vigor. The early Byzantine treatment of the acanthus or thistle, as seen in the capitals of S. Sophia at Constantinople, the Golden Gate at Jersualem, and many other buildings in the East, has never since been surpassed in any purely decorative sculpture \* \* \*.

The enumerated articles are not beyond these definitions, which confine "sculptures" to those "in the round" or "in relief." It is sufficient for this case to say of the enumerated articles they are

all in part in the round and in relief, and, with the single exception noted above, are portrayals in stone of human and animal figures. In this respect they are not unlike in intrinsic character the vase the subject of decision by this court in the recent case of United States *v.* Baumgarten & Co. (2 Ct. Cust. Appls., 321; T. D. 32052). The exception is a portrayal in the round and in relief of figures of the vegetable kingdom, flowers, and wreaths.

What constitutes the professional production of a sculptor only has been the subject of consideration by the Supreme Court, and the following rule was announced in Tutton *v.* Viti (108 U. S., 312, 313):

There is nothing in the acts of Congress to limit the professional productions of a statuary or sculptor to those executed by a sculptor with his own chisel from models of his own creation, and to exclude those made by him, or his assistants under his direction, from models or from completed statues of another sculptor, or from works of art, the original author of which is unknown. An artist's copies of antique masterpieces are works of art of as high a grade as those executed by the same hand from original models of modern sculptors.

The facts disclosed by this record, while meager, are sufficient, we think, to bring the production of these articles fairly within the provisions of the statute as thus interpretated by the Supreme Court.

The invoice covered a variety of articles. Part of these were admitted by the collector under the provisions of paragraph 470 as the professional production of a sculptor only. Part, including the subjects of this appeal, were denied such admission. The evidence before the collector on this point was the certificate of the sculptor himself, attached to the invoice. That certificate recited in this particular as follows:

I, J. Visseaux * * *, Paris, France, do hereby declare that I am the sculptor of certain works of art * * * (including all those covered by these invoices); that the said sculptures constitute the professional production of myself and my sculptors and were produced at my studio on or about the months of April to October, 1909, * * * and I further declare that I had same specially carved for Mr. Benjamin Stern, of New York.

In his report to the collector concerning a part of the same invoice the appraiser recites that they were "returned for duty at 15 per cent ad valorem under paragraph 470, in view of the certificate of the professional sculptor attached to the entry." The same certificate being attached to the same entry accompanied that part of this importation which constitutes the subject of this appeal.

At the hearing the importer testified that "the merchandise was ordered from designs made by an architect in Paris," that "they first sent us the designs on paper and then when we went abroad we had the models made in his place and from those models we ordered the statuary involved," that the person that produced or carved these articles was named "J. Visseaux," that he was "a French artist of very good standing, as far as I know," and that he "did not personally see any of the work done" on these articles.

While this evidence is not what might be desired, we think it fairly shows, in the absence of contradiction in the record, and in the absence of a contrary finding thereupon by the Board of General Appraisers, that these articles were produced by the professional sculptor in his studio, either by himself or by professional sculptors employed by him and acting under his directions and supervision.

We are of the opinion, therefore, that the articles above enumerated should be assessed for duty at the rate of 15 per cent ad valorem under the provisions of paragraph 470.

The decision of the Board of General Appraisers is accordingly *modified*.