(C.D. 2119)

GEORGE D. SPIERS, DOING BUSINESS AS THE PAYNE-SPIERS STUDIOS
v. UNITED STATES (GEORGE L. PAYNE, PARTY IN INTEREST)

United States Customs Court, Third Division

(Decided September 25, 1959)

*Barnes, Richardson & Colburn* (*Joseph Schwartz* of counsel) for the plaintiff.
*George Cochran Doub*, Assistant Attorney General (*Richard E. FitzGibbon*, trial attorney), for the defendant.
*Sharretts, Paley & Carter* (*Howard C. Carter* and *W. R. Johnson* of counsel) for the party in interest.

Before JOHNSON, DONLON, and RICHARDSON, Judges; DONLON, J., dissenting

JOHNSON, Judge: The merchandise involved in this case consists of a stained glass window, valued at over $15 per square foot, depicting the baptism of the infant George Washington, imported by the party in interest at the port of New York and installed in St. Mark's Episcopal Church, Shreveport, La. It was classified by the collector free of duty under paragraph 1810 of the Tariff Act of 1930, under the provision for stained glass windows which are works of art when imported to be used in houses of worship, valued at $15 or more per square foot. The plaintiff herein, an American manufacturer, has filed a protest pursuant to section 516(b) of said tariff act, as amended, claiming that the merchandise is subject to duty under paragraph 230(a) of said tariff act, as modified, under the provision for

stained or painted glass windows, and parts thereof, not specially provided for.

The pertinent provisions of the tariff act are as follows:

PAR. 1810. Works of art, * * * including stained or painted window glass or stained or painted glass windows which are works of art when imported to be used in houses of worship, valued at $15 or more per square foot, * * *. [Free.]

PAR. 230 (a) [as modified by the Torquay Protocol to the General Agreement on Tariffs and Trade, T.D. 52739, effective October 19, 1951, T.D. 52836].
Stained or painted glass windows, and parts thereof, not specially
  provided for_____ 30% ad val.

The only issue involved in this case is whether or not this stained glass window is a work of art within the meaning of paragraph 1810, *supra*.

At the trial, it was stipulated that the window was produced in the following manner:

1. The window was produced and exported by the Studios of J. Wippell and Co., Ltd., at Exeter, England.

2. A water-color design, drawn on a scale of one inch to one foot, showing the subject of the window was created by Mr. Arthur Frederick Erridge, an artist commissioned to design and supervise the execution of this window by J. Wippell & Co., Ltd. The artist's water-color design was made into a full sized drawing in black and white, known as a cartoon, by Mr. Erridge himself.

3. The glass from which the window was made was cut by glass cutters following the lines of the cartoon made by Mr. Erridge. A "glazing drawing" was made by a draftsman from the cartoon by tracing over carbon paper and transferring the main lines of the drawing on the cartoon to a "glazing drawing". The glazing drawing was subsequently used by the lead workers who were to lead the pieces of glass together.

4. The colors of the glass were selected by Mr. Erridge, partly from glass on hand at the Studios and partly from colors ordered from the glass factory, in tones to match the color of the water-color design.

5. The pieces of glass making up the ensemble of the window were then painted under the supervision of Mr. Erridge, after he had prepared a sample palette of the shading and tone for the use of his three assistant glass painters. These assistants were Mr. B. Endacott, Mr. K. Croker, and Mr. Charles Lamb. Each glass painter is a specialist in one phase of the work; one specializes in the painting of the heads of the figures, another in creating the drapery lines and folds, and the third in ornamental detail.

6. These painted pieces were then fired in a kiln built specially to properly fuse the paint and the glass.

7. The pieces of glass were then placed upon the glazing drawing by a glazier who inserted narrow strips of lead, known as cames, between the various pieces.

8. The joints formed by the lead cames were then soldered, the entire window was then cemented on both sides to make it watertight, and the window was then shipped.

9. The operations described in paragraphs 6, 7, and 8 were all performed under the supervision of Mr. Erridge and necessary corrections were made in accordance with his directions.

It was stipulated also that—

\* \* \* Mr. Erridge attended the Central School of Arts and Crafts [in London] from 1914 to 1918 studying a course in stained glass, life and antique church decoration and design. He received a diploma and is a Fellow of the British Society of Master Glass Painters (F.B.S. of M.G.P.).

He was a pupil of James Hogan, the well-known designer of the windows installed in St. Thomas Church at Fifth Avenue and 53rd Street, New York City, and the Church of the Transfiguration at 1 East 29th Street, New York City. He started designing stained glass windows in 1920. He has exhibits at the Lambeth Exhibition of Church Art, the Central Council for the Care of English Churches, The Exeter Art Society, and the Exmouth Art Group.

These exhibits consist of oil paintings, water-colors, stained glass and church furnishings. Mr. Erridge is listed in "Who's Who in Art" and described as an artist and designer in stained glass, ecclesiastical furnishings, an artist in oil paintings, tempera water-color and a designer in leaded glass and embroidery.

\* \* \* the glass used in producing the stained glass window in suit was entirely hand-blown, not rolled glass, known as "Hand-Blown Antique Glass."

\* \* \* the three assistants mentioned in paragraph 5 of the stipulation, named Mr. B. Endacott, had 30 years experience in glass painting, including at least 4 years of apprenticeship to a stained glass artist, and who has also done modeling and sculpturing;

\* \* \* Mr. K. Croker, a graduate of Exeter Art School and the holder of two diplomas from the British Society of Master Glass Painters, a pupil of Mr. Erridge for 16 years, and that he has also produced paintings in water-colors; and

\* \* \* Mr. Charles Lamb was a student of James Hogan and a graduate of of The Central School of Arts and Crafts, and that he has had experience in glass painting with many firms in London.

Counsel for the plaintiff offered in evidence a photograph of the window in question, which he stated he received from counsel for the party in interest. There being no objection, the photograph was received in evidence as plaintiff's exhibit 1.

Six witnesses were then called, four by the plaintiff and two by the party in interest, on the question of whether the window was a work of art.

The qualifications of these witnesses may be summarized as follows:

Arnold Gottlieb has been a painter in oil for the past 25 or 30 years; he studied at several art schools in New York, and spent a year and a half abroad, studying in France and Germany; he has exhibited his work in galleries and museums in New York, Baltimore, and Virginia, and in Europe, Japan, and India; he has taught at Pratt Institute and the University of California at Los Angeles; he has done some work in stained glass, including a large glass wall for Steinberg House in New York; he has served on art juries during the past 10 years, passing on work which is to be admitted to art exhibits and awarding prizes.

Duncan Niles Terry has been an artist in glass since 1931; he studied at the Boston Museum of Fine Arts School, the Central School of Arts and Crafts in London, the University of London, Harvard University, and the Massachusetts School of Art; he has been a pupil of Fernand Leger in Paris; in addition to his work in stained glass, he has done water-colors and pastels; he has exhibited in London and South America and is now doing some work for Japan.

Anatol Shulkin is an easel painter, muralist, portrait painter, and teacher; he studied at the National Academy of Design, Columbia University, and in Paris; he has exhibited his work throughhout the United States and has been a winner of competitions for mural painting; early in his student days he was assistant to a mural painter of stained glass windows, DeLeftwich Dodge; his own creative work has been in other media.

Ernest Fiene studied at the National Academy of Design, the Institute of the Beaux-Arts, and the Art Students League; he has exhibited, since 1919, in national shows and in many museums here and abroad; he has taught at Columbia University and several art schools and has served on art juries; he has not done any work in stained glass but has been interested in it.

Helen Van Wyk is an artist and an art teacher; she studied at the Art Students League, the New School for Social Research, and with Maximilian A. Rasko; she has exhibited at several exhibitions and has won prizes for still life pictures.

M. A. Rasko has been a painter in all media for 55 years; he studied at many famous art schools in Europe, including the Fine Arts Academy of Munich and the Papal Academy in Rome; he has lectured on art in various universities and has exhibited his own work widely; his works include portraits of well-known personages, such as European royalty, Presidents Wilson, Harding, Coolidge, and Roosevelt, Sir Winston Churchill, and Fritz Kreisler; he has done ecclesiastical work.

Two of the witnesses, Mr. Shulkin and Mr. Fiene, had seen the window itself, while the others based their testimony on photographs thereof. Mr. Shulkin testified that the window did not appear as represented in the photograph; that the faces were brown or reddish in the photograph but were black in the window itself; and that the cause may have been an erroneous method of silvering. In the photograph produced at the trial, the faces are in natural colors and are clearly delineated. It does not seem likely that the photograph could have brought out the faces in this manner, had they actually been black. It was the plaintiff who introduced the photograph into evidence and witnesses for both parties testified on the basis thereof. We conclude that Mr. Shulkin's statement that the photograph was not representative of the window is entitled to little weight.

While the witnesses were not in agreement as to whether or not this window was a work of art, we are convinced that, on the basis of his knowledge, training, and experience, the testimony of the witness M. A. Rasko is entitled to the greatest weight. The substance of his testimony, which was definite and certain, together with his demeanor at the trial, was most impressive.

The witnesses who did not consider the window a work of art stated that, in their view, it was devoid of esthetic merit, was banal, dreary, uninspired, unimaginative, lacking in the artist's personal concept, and was a copy or an adaptation of Gothic and Renaissance designs which had been done over and over again. They were of opinion that it was not a work of art because it portrayed in traditional style the scene of a baptism, a subject which has been done many times before. For instance, Mr. Gottlieb said it was so full of clichés that the artist did not have to think very much to produce it; Mr. Shulkin stated that, except for placing the figures in a little different position with a little different costuming, it was a thing which had been done frequently, and Mr. Fiene said it was too conventional to show any artistic inspiration.

However, the witness Gottlieb admitted that the artist who created the window considered it a work of art and the witness Terry, in stating that it did not have esthetic appeal, said he could speak only for himself. Mr. Shulkin testified:

X Q. Assuming a picture were an inspiration which you have never had, would you say that it could not be a work of art because you disliked that particular picture?—A. Yes.

These witnesses also based their conclusions on the fact that Mr. Erridge, the artist who designed the window, did not himself paint the figures and the expressions on the glass.

On the other hand, the witness Rasko testified positively that it was a work of art. In evaluating his testimony, it is important to note that he was the only one of the witnesses who had done ecclesiastical work and that he had had more experience than any of them. He testified that the window had all the earmarks of profound knowledge and that it combined an English Gothic very successfully with a Renaissance rendering, not an easy thing to do, and which only an artist was capable of. He continued:

Its placement of color is absolutely to the demands of liturgic excellence. The canopy, which reaches up high, has symbols of the crown, and there are other hidden symbols, like the shell and on the ornaments in back, the falling leaf. That all alludes to that very event. A man who can combine all these things and coordinate them in the way it appears on this photograph of the window must be a very first-grade artist, to my opinion.

\* \* \* It copes with all the requirements of aesthetic, not only in subject matter but rendering, the beautiful delicacy of the colors towering up to the crown, the displacements of the blues in back of that curtain, the yellows and the reds are so wonderfully coordinated that aesthetic is just oozing out of it.

The witness made it plain that he did not consider the subject matter banal. He said he had never seen any other window depicting a baptism in this form; that it was a very emancipated concept because it was put in the 18th century; that it was ecclesiastical art; and that it

was a free and unbridled concept which only an intellectual person, an artist, could do. In his view, it was the creation of the artist since he had made the water-color sketch, had made an enlargement, correcting all the small errors, and had supervised every bit of the production of the window.

Mrs. Van Wyk also testified that the window was a work of art. In her opinion, it was an original idea of the artist and was comparable in quality to stained glass windows she had recently seen in Rome.

The general term "works of art" is found in several paragraphs of the tariff act, always in connection with other descriptive words. The portion of paragraph 1810 here applicable provides for stained or painted glass windows which are works of art when imported to be used in *houses of worship*. It is evident, therefore, that the type of art contemplated by Congress under this provision was ecclesiastical art, whose subject matter is obviously limited. It is, of course, well known that certain religious subjects, including baptisms, have been done over and over by artists of note and are, nevertheless, considered to be works of art. This must be taken into account in evaluating the testimony of the witnesses who found the window banal or an adaptation of Gothic and Renaissance designs. For instance, although Mr. Fiene said that one of his reasons for not considering it a work of art was that he had seen many windows which gave him *similar* impressions, the fact that Mr. Rasko, who has traveled to many parts of the world, stated definitely that he had never seen any other window that depicted a baptism in this form is indeed significant. It thus appears that although the general subject is one that has been done before, the treatment of it was the original conception of the artist. So far as the record discloses, there is no duplicate of this window in existence. According to the stipulated facts, the design was created by Mr. Erridge, a well-known artist and designer of stained glass. Even if the general subject had been suggested to the artist (which is not clear from the record herein), it would not detract from the originality of his work. *Wm. S. Pitcairn Corp.* v. *United States*, 39 C.C.P.A. (Customs) 15, C.A.D. 458.

The court, in the *Pitcairn* case, differentiated the "works of art" provided for in paragraph 1547 (a) of the Tariff Act of 1930 from the original paintings and sculptures provided for in paragraph 1807, which the court described as "that fine art which is the product of a somewhat rare and a very special genius." It was held that figurines which were reproductions of the work of professional sculptors and which were described as articles of common commerce need not themselves be the work of professional sculptors in order to be classifiable under a provision for works of art, statuary, sculptures, or copies, replicas, or reproductions thereof. The works of art provided for in paragraph 1547 (a) are dutiable, for which reason it may be said that

it is not so necessary that they measure up to the standards required for free entry under paragraph 1807. While paragraph 1810 also provides for free entry, the works of art therein contemplated need not be "the product of a somewhat rare and a very special genius," since it is not required that they be *original* and since the works entitled to free entry are limited to stained or painted glass windows to be used in houses of worship.

In *United States* v. *Perry*, 146 U.S. 71, it was stated that stained glass windows, such as found in foreign cathedrals, were works of art, but they were not in the same category as the works of Raphael, Rembrandt, Murillo, and other masters of the art of painting. Under the statute there involved, it was held that special favor was extended by Congress to the fine arts, including paintings in oil and water and original statuary, but that stained glass windows were specifically taken out of the exemptions for works of art, including pictorial paintings in glass. Under the present tariff act, such windows, when they are works of art and are to be used as church windows, are entitled to free entry. They must have sufficient artistic merit to meet the accepted standards for works of art but they are not required to be masterpieces.

We conclude, therefore, that the window involved herein was designed by an artist, a well-known and highly respected member of his profession; that it embodied his own esthetic imagination and artistic conception; and that it is without the peradventure of a doubt of the type contemplated by the term "works of art" in paragraph 1810.

A further point to be considered is whether the window is excluded from classification as a work of art because of its method of execution. According to the stipulation, the pieces of glass making up the ensemble were painted under the supervision of Mr. Erridge by three assistant glass painters. While these assistants have been referred to as artisans by the plaintiff, it was stipulated that they had had training and experience as artists in glass and had done artistic work in other media. Moreover, one of them was a pupil of the same designer of stained glass windows as was Mr. Erridge. They were, therefore, more than artisans, whether or not they were as highly qualified as was the master artist.

Several of the witnesses testified that well-known artists, Rubens, for example, had employed apprentices and assistants who did some of the work. Mr. Shulkin said such paintings did not show the fine work of Rubens and were not considered of high quality. Mr. Fiene testified that there were different opinions as to whether they were works of art. In his view, where such work was an imitation of Rubens, it was not a work of art. Mr. Terry testified that painters, such as Rubens, Hals, and Goya, would not have permitted assistants to select the colors. It is significant, therefore, that, in the instant

case, the master artist, Mr. Erridge, not only selected the colors of the glass but prepared a sample palette of the shading and tone for the use of his assistants.

Another witness, Mrs. Van Wyk, stated that the size of a particular work might make it necessary for the artist to have assistants in order to fulfill the job, but that it would, nevertheless, be a work of art. Mr. Rasko testified:

* * * We are living in times where time element is an extraordinary factor, and these people, I understand, especially that man [referring to Mr. Erridge], has enlarged himself freely from his sketch, correcting all the small errors as enlarged, supervised every bit of this window's making. It is certainly his creation, and please do not confuse that the technical part of bringing such a thing to existence has got nothing to do with the merits of the artistic part of the picture.

It has long been held that the professional work of an artist includes that done by qualified assistants under his supervision. *Tutton* v. *Viti*, 108 U.S. 312; *Merritt* v. *Tiffany*, 132 U.S. 167; *Stern* v. *United States*, 3 Ct. Cust. Appls. 124, T.D. 32381; *American Colortype Co.* v. *United States*, 9 Ct. Cust. Appls. 212, T.D. 38046; *Ebeling & Reuss Co.* v. *United States*, 40 Cust. Ct. 387, C.D. 2009.

In the case last cited, the articles consisted of glass sculptures which were held to be works of art. There, the artist produced a sketch, explained to the glassblower how the article was to be made, and then supervised him in his work. Where the article was to be engraved, the artist prepared a sketch of the design and supervised the engraving process which was done by his students. The court stated that these workmen, by virtue of their training and experience, were recognized as artists and that the objects were the result of artistic skill and the ability of artists to work with glass as an art medium.

In *Wm. S. Pitcairn Corp.* v. *United States*, *supra*, the persons who painted the figures had been trained in art schools or in the Doulton training school. They painted the figures in accordance with instructions and under the supervision of the person who prepared the original color scheme. The court of appeals stated, in the course of its opinion:

We have not commented upon the work of those who painted the articles because the primary interest here revolves about the sculpture. The evidence is clear, however, that a high order of skill is displayed in the decoration of the figurines.

In the instant case, in view of the medium in which the work was produced, and since the original design was prepared by the master artist, who selected the colors to be used and supervised the execution of the work throughout, the fact that the actual painting was done by assistants, who were trained as artists and were specialists in different phases of glass painting, does not make it any the less a work of art.

We hold, therefore, that the stained glass window involved herein is entitled to free entry under paragraph 1810 of the Tariff Act of 1930, as a stained glass window which is a work of art imported to be used in a house of worship, valued at $15 or more per square foot. The protest is overruled and the collector's classification sustained.

Judgment will be rendered accordingly.

### DISSENTING OPINION

DONLON, Judge: I dissent. On the weight of evidence and the law, it is my opinion that the record does not support a finding that this stained glass window is a work of art, within the congressional intention as expressed in paragraph 1810.

Congress has made two *eo nomine* provisions for stained glass windows. The competition, therefore, is not between an *eo nomine* provision, on the one hand, and a general or unspecified provision, on the other hand. The competition is between one *eo nomine* provision (paragraph 1810) for those stained glass windows *which are works of art* when imported to be used in houses of worship and valued at $15 or more per square foot, which are duty free, and another *eo nomine* provision (paragraph 230(a)) for *other* stained glass windows, which are subject to duty. If the window here in litigation meets the statutory conditions of paragraph 1810, the importer has the right to have it come in duty free. If it does not meet those conditions, he should pay duty.

There were six witnesses, all more or less qualified as experts to form an opinion on the artistic merits of works of art. Only two of these witnesses ever saw the window. Both of these witnesses testified that, in their opinion, this window is *not* a work of art. They gave reasons for the opinions they had formed. They also pointed out certain characteristics of the window as they had viewed it which they thought the photograph did not adequately show.

The other four witnesses all testified without having seen the window. On trial, they were shown a photograph of the window. They listened to a description of how and by whom the window was designed and made, and they heard a statement read as to the training and experience of those who contributed effort to the window either as artist and or as artisans. Two of these four witnesses, testifying for the party in interest, were of opinion that this window, which they had never seen, was a work of art. Two of them, testifying for the American manufacturer, were of opinion that this window, which they had never seen, was not a work of art. One of the two latter witnesses is the only one of the six experts who works as an artist in the medium of stained glass.

If not inadmissible, certainly opinion evidence that an object which the expert witness has not viewed is or is not a work of art is too specu-

lative and uncertain to rebut the opinion evidence of expert witnesses who have personally viewed the object.

Our appeals court expressed its view of such testimony (as to a sculpture) in *Marshall Field & Co.* v. *United States*, 5 Ct. Cust. Appls. 191, saying, at pages 194, 195:

It may be, and with good reason, that the board doubted the ability of any one of these witnesses, although testifying in good faith, to give satisfactory evidence from a photograph of an article as to whether the article was the production of a professional sculptor or a skilled artisan.

Assuming, as the evidence shows, that works of this kind must be made from a model which is a professional sculptor's creation, it must also be assumed that a skilled artisan might with his tools be able to produce a close imitation thereof, so close, indeed, that not every photograph thereof would disclose whether the artisan or the sculptor did the work or whether or not the sculptor supervised it.

It is well known that while the photographic art *may* produce vivid and realistic pictures of articles placed before the camera, yet so much depends upon position, light, shadow, skill of photographers, and perfection of the apparatus in each case that it can hardly be said as a matter of law that photographs like these, which show but one view or presentation of the object, furnish a sufficient representation thereof to enable one, however skilled as a sculptor or as a judge of sculpture, to declare from an inspection of a given photograph that it is the production of a professional sculptor only. A photograph taken with the camera in a different position, showing a different view of the article, might reveal evidence that on the whole the artisan and not the professional sculptor produced the original. [Italics quoted.]

Opinion evidence of this kind, if it is admissible on such an issue as we have here, which is by no means conceded, must in the very nature of things be uncertain, and should be carefully scrutinized, notwithstanding the witness himself may have no doubt as to the correctness of his opinion. If such evidence is admissible its office is only to aid the triers to form their opinion upon the very question as to which the witness is permitted to express the opinion which he entertains.

It is not of the class of testimony given by the person who produced the article. Such evidence if credible and not rebutted might, if disregarded by the triers, be a ground for and demand a reversal.

No reason appears in this case why such evidence was not offered, nor does it appear why typical exhibits were not produced.

Twenty years later, our appeals court ruled on the admissibility of photographs of alleged works of art. In *United States* v. *Mrs. Adelaide Ehrich*, 22 C.C.P.A. (Customs) 1, the court said:

Some question has arisen as to the weight to be given to the photographic exhibits, Illustrative Exhibits A, B, and C. This court has never held such photographs to be inadmissible, but has indicated, in some cases, that such photographs, standing alone, are not sufficient upon which a witness, without other knowledge on the subject, may pronounce the objects shown by such photographs to be works of art. This was the holding in *Marshall Field* v. *United States* and *Freidlaender Co.* v. *United States* [19 C.C.P.A. (Customs) 198], *supra*. However, such was not the case here. At least two of the witnesses had seen the imported articles and knew of their method of construction. The

photographs were admissible, to be given such weight as they are entitled to in connection with the other testimony, as to the character of the imported articles. [P. 5.]

Applying this doctrine to the record before us, I find that here, also, two of the witnesses had seen the imported window and knew of its method of construction. The photograph, then, and evidence based upon a view of the photograph but without viewing the window, is to be given only such weight as it is entitled to in connection with other testimony as to the character of the window.

It does not appear why the party in interest failed to present the testimony of a single qualified witness who had actually viewed the window. If there was some good reason why this could not be done, the court is not informed as to what that reason is.

Evaluation of an object as a work of art is not objective. It is a subjective experience. In the idiom of the day, it has been said that unless a painting or sculpture or other object of so-called art "sends you," it is not, for you, a work of art.

It is not necessary that the court itself should view an alleged work of art, although that is helpful. Nor is it necessary that judges should experience personal artistic appreciation. It is, at the least, desirable and perhaps necessary that those who testify to their personal evaluation of an object as being a work of art or as not a work of art, shall have viewed the object they are evaluating. Otherwise, it is hard to see how they may truly state whether or not they experience the subjective reaction identifiable with what their training leads them to expect in a work of art. Without the evidence of some such witnesses, the presumption that the collector's classification in work of art cases is correct, cannot easily be overcome.

Here, we have appropriate opinion evidence to overcome the presumption, and there is nothing of comparable weight in rebuttal.

I do not share the view of the majority that ecclesiastical art is of an inferior order. Indeed, to the contrary, some of the greatest art of the ages is church art. There are church paintings, of course, that are not art.

Nor do I find that the precedents cited in the majority opinion are authority for a holding that the evidence of record establishes that this window is a work of art.

The test under paragraph 1810 is that the window shall be a work of art. On the record before us, I am of opinion that this window is not a work of art under paragraph 1810.

The majority cite the decision in *Wm. S. Pitcairn Corp.* v. *United States*, 39 C.C.P.A. 15, construing paragraph 1547(a). Congress provided, in paragraph 1547(a), dutiable classification not only for a sculpture, which is itself a work of art, but also for *copies, replicas,*

*or reproductions* of such a sculpture, of a value as low as $2.50 each. That is quite different from the duty-free provision now before us.

In the recent decision of another division of this court, *Ebeling & Reuss Co.* v. *United States*, 40 Cust. Ct. 387, C.D. 2009, also cited by the majority, articles were held, on testimony which was described as uncontradicted, to be original glass sculpture or statuary within the purview of the dutiable provision of paragraph 1547(a). The court had the opportunity of viewing the articles, and found them to be "within the class of modern suggestive art" (page 393) and "sculptures of modern art" (page 394).

The testimony here is *not* uncontradicted. We have not viewed the window. Moreover, there is no such specific statutory provision for duty-free entry of modestly priced copies or replicas of an artistic stained or painted glass window, as there is for dutiable entry of modestly priced copies and replicas of an artistic piece of sculpture. Indeed, no claim is asserted that this window is a copy of some other window which, itself, is a work of art. This window is the original. *It* must be a work of art in order to merit duty-free entry under paragraph 1810.

That the dutiable provision in paragraph 1547(a) for copies and replicas of sculpture is susceptible of interpretation as to congressional intent, in the tariff sense, different from the provisions of the duty-free paragraphs for works of art, was aptly stated by our appeals court in the *Pitcairn* case, *supra*, at page 36:

> The Congress did not create the new law embraced in paragraph 376 of the 1913 tariff act idly, nor has it been retained idly. The amendment as to valuation adopted by the Congress which passed the 1930 Act is believed to have a significance which aids in interpreting the paragraph. That phraseology has not been considered by us previously.

> The Congress obviously intended that some forms of statuary and sculpture and copies, replicas, or reproductions of same should be classifiable under paragraph 1547(a), *supra*. If figurines, such as those here involved, are held not to be so classifiable, it seems to us the paragraph will be greatly mutilated even if not wholly emasculated.

Our problem is to ascertain what Congress intended when it enacted the duty-free provision for stained or painted glass windows in paragraph 1810 of the Tariff Act of 1930. This provision was new in the Tariff Act of 1922, where it was paragraph 1707. The history of that provision is matter of public record. The controversy then, as here, was between importers and the American industry. The importers sought a broad provision for duty-free entry of all stained or painted glass windows of a value of $15 or more per square foot, to be used in houses of worship. The House bill embraced their views. The story was otherwise when the House bill went over to the Senate side of Congress. What happened there, as recounted by our appeals court, is pertinent here.

\* \* \* When the bill went to the Senate Committee on Finance strong representations were there made by American producers of such goods, asking that this paragraph be so modified as to exclude such products from the benefit of the free list provisions of the paragraph, the argument being made that the American industry was being endangered by such free entry. Senate Hearing, Vol. VI, pp. 5011-5059. The Senate Committee on Finance and the Senate, in apparent partial compliance with this request, amended the bill to the form now appearing in the statute; in other words, by limiting the free entry provision to stained or painted window glass or stained or painted glass windows "*which are works or art when imported to be used in houses of worship and when ordered after the passage of this act, valued at $15 or more per square foot.*" [Emphasis quoted.] [*Frei Art Glass Co.* v. *United States,* 15 Ct. Cust. Appls. 132, 138.]

In inserting into paragraph 1810 the limiting words "which are works of art," I am of opinion that Congress intended that stained or painted glass windows, in order to be entitled to duty-free entry, should in conception and execution meet the accepted standards for works of art such as are permitted to come in, duty free. The context suggests this, and there is nothing to indicate any other intention.

Whether all high-priced stained and painted glass windows imported to be used in houses of worship should come in duty free, as importers urge, is a question of policy for Congress to decide. It is not our province, or that of the Treasury Department, to make such policy. Congress has spoken. Duty-free entry is to be permitted only for those windows "which are works of art." Importers should not be permitted to achieve either by executive decree or by judicial fiat a victory they did not succeed in winning in Congress. They should go back to Congress if they want to change the law.

There is a well-recognized distinction between the skills of an artisan and those of an artist. The artisan is one "trained to manual dexterity in some mechanic art or trade; a handicraftsman; a mechanic." The artist is one "who professes and practices an art in which *conception and execution are governed by imagination and taste*; a person skilled in one of the fine arts." (Definitions quoted are from Webster's New International Dictionary, second edition, 1956; emphasis supplied.)

On the record before us, it is not necessary here to decide whether the *assistance* of artisans in the *execution* of a work by the artist whose conception it is, negatives its status as a work of art. Here, the record shows no opinion by any one who had ever viewed the window, that this is a work of art. And the record shows, not mere incidental assistance to the artist by the artisans, but rather that they, the artisans, did all of the work of *execution* from the design of the artist's *conception*. There is no proof of execution, even in part, by one whose execution is "governed by imagination and taste."

On the authorities here cited, and on the record before us, I find that the American manufacturer has overcome the presumption that

the collector's classification is correct, and the party in interest has not offered evidence of comparable weight in rebuttal. On the weight of evidence, I find and hold that this stained glass window is not a work of art which is entitled, as such, to duty-free entry under paragraph 1810.